Davis, J.,
delivered the opinion of the court:
A vacancy having occurred during a recess of the Senate-among the post chaplains of the United States Army, the plaintiff received from the Secretary of War the following communication:
“War Department,
“ Washington City, November 21,1887.
“ Sir : You are hereby informed that the President of the United States has appointed you post chaplain in the service of the United States, to rank as such from the twenty-first day *399 of November, one thousand eight hundred and eighty-seven. Should the Senate, at their nest session, advise and consent thereto, you will be commissioned accordingly.
“Immediately on receipt hereof please to communicate to' this Department, through the Adjutant-sGeneral of the Army, your acceptance or nonacceptance; and, with your- letter of acceptance, return the oath herewith inclosed, properly filled up,, subscribed, and attested, and report the date and place of your birth and the place of which you are now a resident (your home).
“Tour order of assignment will be deferred thirty days, to enable you to make preparations to enter on duty.
“Vi. C. Edincott,
“ Secretary of War.
“Post Chaplain Maurice O’Shea,
“ U. 8. Army, Fort Niagara, Youngstown, N. Y.”
Plaintiff accepted the appointment thus made, but his name was never submitted to the Senate, while another chaplain was nominated, and, in the following March, appointed to fill the vacancy for which the plaintiff was first designated.. Plaintiff now claims pay as post chaplain from November 24, 1887, to March 5,1888, when the commission of his successor took effect.
This contention the plaintiff bases upon the second article,, second section, last clause of the Constitution of the United States; which provides: “ The President shall have power to fill up all vacancies that may happen during the recess' of the Senate by granting commissions which shall expire at the end of their next session.” As a vacancy did exist in the list of post chaplains in November, 1887, which had happened ‘during the recess of the Senate, there is no question that the President then had power to fill it. It is, however, urged that the letter of November 21,1887, was not a commission, such as is contemplated by the preceding section of the Constitution and by section 3 of the same article, which intends (it is said) that the President “ shall commission all the officers of the United States.”
The first question to be decided, then, is whether, through the letter of November 21, the President exercised his power to “fill up” the vacancy then existing. So-far as such a letter could appoint, the appointment was made; it was accepted in terms by the plaintiff; his oath of office was duly made and filed, and he notified to the Department of War his readiness to *400 perform Ms official duties. Undoubtedly the appointment of an officer in the Army can be made only by the President, and in ordinary course is and should be made by granting a commission sighed by him. We fail to ñnd, however, any provision of law prescribing the form of this commission, or, except as hereinafter shown, that it shall bear the sign manual of the President.
Section 1794 of the Eevised Statutes provides, in substance, that the Secretary of State shall keep the great seal, “ and shall affix the same to all civil commissions for officers of the United States to be appointed by the President, by and with the advice and consent of the Senate, or by the President alone;” and further provides that the seal shall not be affixed to any commission before the same has been signed by the President. It will be noted that this provision of law is expressly confined to “ civil” commissions for officers of the United States, thus by legal inference excluding “military”, commissions. The direction as to civil commissions has since been modified by authorizing postmasters’ commissions to be under the seal of the Post-Office Department and to be countersigned by the Postmaster-General; by authorizing the commissions of all officers under the control of the Secretary of the Interior to bear the seal of the Department of the Interior; and by authorizing the commissions of all judicial officers, including marshals and attorneys of the United States, and all commissions theretofore prepared at the Department of State upon the requisition of the Attorney-General, to be under the seal of the Department of Justice and to be countersigned by the Attorney-General. In all these cases the signature (except as to the Interior Department) is required to be upon the commission before the seal is affixed (Sup. Eev. Stat., vol. 1, 2d ed., pp. 5, 78, and 605.) It thus appears that the only express statutory provisions as to the form of commissions relate to civil commissions alone.
As to commissions in the Army of the United States we find this statutory direction'Only:
(Section 216, E. S.) “The Secretary of War shall perform such duties as shall from time to time be enjoined on or entrusted to him by the President relative to military commissions, the military forces, the warlike stores of the United States, or to other matters respecting military affairs; and he *401 shall conduct the business of the Department in such manner as the President shall direct.”
The commission, whatever its form, is but evidence of the fact that the President has exercised his constitutional power of appointment; and if it be held that a recess appointment, to be valid, must be evidenced by a commission, still we find nowhere any provision requiring a specified form. The document sent to the plaintiff in November is signed by the Secretary of War; it is addressed to the plaintiff as a post chaplain in the United States Army; it informs him that “the President of the United States has appointed you post chaplain in the service of the United States.” * * * 11 Should the Senate, at their next session, advise and consent thereto, you will be commissioned accordingly.”
This appointment is in the form then used for recess appointments to the Army; the President had the power to make the appointment, and the act of the Secretary (which expressly declares that the President had made the appointment) is conclusive evidence of the fact that it was made. (Wilcox v. Jackson, 1 Peters, 498, 513; United States v. Eliason, 16 Pet., 201, 302; Confiscation Cases, 20 Wall., 92, 109; United States v. Farden, 99 U. S. R., 10, 19; Walsey v. Chapman, 101 U. S. R., 755, 769.) In our opinion the communication of November 21, with the acceptance and oath filed, made jfiaintiff a post chaplain during the next session of the Senate,, unless some other person should be nominated to the Senate and with that body’s advice and consent commissioned in his place. This did occur, but not until March, 1888.
Having been thus invested with the office of a post chaplain, plaintiff held the rank of captain of infantry without command, and was “ on the same footing as other officers of the Army as to tenure of office, retirement, and pensions.” (Rev. Stat., Sec. 1122.) He then became subject to the provisions of section 1229, which provides that “the President is authorized to drop from the rolls of the Army, for desertion, any officer who is absent from duty without leave; and no officer so dropped shall be eligible for reappointment. And no officer in the military or naval service shall in time of peace be dismissed from the service except upon and in pursuance of the sentence of a court-martial to that effect, or in commutation thereof.” As this officer did not fail in his duty after appoint *402 ment, tbe President was without power to dismiss Mm or to revoke tbe appointment after plaintiff bad accepted it and qualified for office by filing bis oatb and by signifying bis readiness for duty.
Another point remains to be considered, and that is, whether by complying with letter of tbe Adjutant-General, dated November 25 (which evidently crossed bis letter of acceptance, dated tbe same day), requesting or ordering him to return tbe letter of appointment, plaintiff shall be held to have resigned tbe post or to have acquiesced in any theory of tbe-War Department that tbe appointment was not then complete. We fail to find in tbe correspondence any such intention upon plaintiff’s part. He considered himself upon November 25 an officer of tbe Army, subject to military discipline. Receiving bis first direction from bis official superior, be naturally and properly complied with it. If this were not so and something in tbe nature of a protest be held necessary upon bis part in returning Ms appointment, still there is nothing in tbe letter of tbe Adjutant-General (of November 25,1887) to put plaintiff upon Ms guard. That letter “requests” him to return tbe letter “appointing” him a post chaplain, as this “appointment” bad been transmitted to him by tbe Adjutant-General “prematurely.”
In this communication there is not shown an intention to-revoke tbe appointment. Plaintiff evidently did not understand that there was such an intention (if it did, in fact, then exist in tbe mind of tbe President, which is not shown), and properly forwarded tbe letter without comment. Bight days later be was advised to defer any preparation for going on duty as post chaplain in tbe Army, which might involve expense, as “there is now some uncertainty as to your appointment to that office.” Tbe word “now” in this communication is significant. Plaintiff, following Army Regulations, reported to headquarters in January as a post chaplain, and learning later from tbe paymaster that there was no notice of tbe appointment given, be brought tbe facts to tbe attention of tbe Adjutant-General, stating that be bad sent forward tbe appointment in “prompt obedience” to bis “military superiors,”' and “in tbe implicit confidence that it would be returned to ‘Mm’ when necessary corrections should have been made.” There is nothing in all of this to show tbe slightest intention *403 ■apon plaintiff’s part' to relinquish, any rights which the appointment had given him.
It remains to be seen whether the President in fact authorized the action of the Secretary of War or whether the Secretary acted unadvisedly ; for if the President did authorize the appointment and it was thereupon made and accepted as here-inabove set forth, it was beyond the President’s power to revoke it.
The letter of the Secretary, dated November 21, distinctly states “that the President of the United States has appointed you post chaplain in the service of the United States.” Ordinarily this would be conclusive upon this branch of the case,, but other correspondence ensued which shows one of two' things — either that the Secretary acted in advance of authority, which is, to say the least, most unlikely, or that after November 21 the President saw fit to reconsider his order of appointment.
In his letter of November 25 the Adjutant-General requested the return of the letter of appointment upon the ground that it had been transmitted by him (the Adjutant-General) prematurely. This letter simply intimates that the Adjutant-General had acted hastily and contains no intimation that the Secretary of War had acted without authority. It relates to the delivery of the letter alone and not to the order of the President. Two weeks later the Adjutant-General writes that plaintiff should defer making any preparation for going on duty, “as there is now some uncertainty as to your appointment.” Still no intimation that the President had not ordered the appointment and not even a statement that the appointment was regarded as revoked or void, but an indication of doubt and a caution to plaintiff to avoid expense.
First in January, some fifty days after the- last letter mentioned, was plaintiff informed that he was “not regarded as an officer of tbe Army.” In the face of the very strong presumption that the Secretary of War would not have sent the letter of November 21 in advance of an order from the President — that he would not say the President “has appointed,” when in fact the President had not appointed — we can not construe the subsequent correspondence to mean other than that the first decision was reconsidered; but as this reconsideration *404 occurred after plaintiff bad been appointed and qualified it was inoperative.
Judgment for plaintiff in tbe sum of $425.04.