Rear Admiral (LH) Noel K. DYSART, Medical Corps, U.S. Navy (Ret.), Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 03–5106.

United States Court of Appeals, Federal Circuit.

DECIDED: May 26, 2004.

Charles W. Gittens, Law Offices of Charles W. Gittins, P.C., of Middletown, VA, argued for plaintiff-appellant.

Brent M. McBurney, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief was Gregory R. Bart, Lt. Cmdr., United States Navy, Office of the Judge Advocate General, of Washington, DC. Of counsel was Edward J. Duffy, Lt. Col., United States Marine Corps, Office of the Judge Advocate General, of Washington, DC.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, of Washington, DC, argued for amici curiae. With him on the brief were Matthew S. Freedus and Todd A. Wynkoop.

Before RADER, DYK, and PROST, Circuit Judges.

DYK, Circuit Judge.

On June 12, 1998, the President removed appellant Rear Admiral (Lower Half) Noel K. Dysart from the promotion list for the grade of rear admiral in the United States Navy ("Navy"). The appellant filed suit in the Court of Federal Claims, asserting that he had been automatically promoted to that grade as of September 1, 1997, and that he was entitled to the corresponding pay and benefits. In addition, the appellant sought reinstatement to the Navy and asserted a separate

claim for medical additional special pay ("MASP"). The Court of Federal Claims granted summary judgment for the government on the administrative record. *Dysart v. United States*, No. 02–294C (Fed.Cl. May 5, 2003). We affirm.

## BACKGROUND

### I

■ This case presents significant questions concerning the appointment process for military officers. The Constitution provides that the President has the authority to nominate and, "by and with the Advice and Consent of the Senate," to appoint "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. Three separate actions are ordinarily required for a person to be appointed to office pursuant to this provision: the President's nomination, confirmation by the Senate, and the President's appointment after Senate confirmation. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 155–56, 2 L.Ed. 60 (1803). In accordance with this process, the President first selects a nominee and sends the nomination to the Senate. The Senate acts on the nomination and determines whether or not to confirm the nominee. If the nominee is confirmed, the President appoints the officer and signs a commission or performs some other public act as evidence of the officer's appointment. *See id.* at 157. The Constitution also provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

■ A naval officer is an "Officer of the United States" in accordance with Article II. *See United States v. Mouat*, 124 U.S. 303, 307, 23 Ct.Cl. 490, 8 S.Ct. 505, 31 L.Ed. 463 (1888) (holding that a naval officer who "holds his place by virtue of an appointment by the president" is an "officer of the United States"). The permanent promotion of a military officer to a higher grade, as well as his initial appointment, is subject to this constitutional process. *See Weiss v. United States*, 510 U.S. 163, 174, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994) (holding that "the Appointments Clause [cannot be circumvented] by unilaterally appointing an incumbent to a new and distinct office"), *aff'g* 36 M.J. 224, 227 (C.M.A.1992) ("All regular officers of the military services are appointed by the President and confirmed by the Senate.... Active duty military officers are appointed and confirmed again upon each promotion to a grade above pay grade O–3."); *Shoemaker v. United States*, 147 U.S. 282, 300–01, 13 S.Ct. 361, 37 L.Ed. 170 (1893).[1]

Beginning in 1916, Congress attempted to regularize the promotion process for military officers, including naval officers. In particular, Congress directed the Navy to use a process involving selection boards for promoting naval officers to fill vacancies in the grades of commander, captain, and rear admiral. *See* Act of Aug. 29, 1916, ch. 417, 39 Stat. 556, 578–79. Pursuant to the statute, a selection board selected officers in a particular grade to fill vacancies in the next higher grade and submitted a report with its recommendations "to the President for approval or disapproval." *Id.*, 39 Stat. at 579. The selection board process was expanded in 1947 to encompass the promotions of all naval officers to grades above lieutenant

---

1. The President has the authority to make temporary appointments and promotions outside of the constitutional process in times of war or national emergency. *See* 10 U.S.C. § 603 (2000).

(junior grade). *See* Officer Personnel Act of 1947, § 104(a), 61 Stat. 795, 800.

In 1980, the Defense Officer Personnel Management Act ("DOPMA"), Pub.L. No. 96–513, 94 Stat. 2835 (1980), was enacted. DOPMA provides for selection boards, which recommend officers between the grades of lieutenant (junior grade) and rear admiral (lower half)[2] (in the Navy) and first lieutenant and brigadier general (in the Army, Air Force, and Marine Corps) for promotion to the next higher permanent grade. *See* 10 U.S.C. § 611(a) (Supp. I 2001). The board submits its recommendations in a written report to the Secretary of the appropriate military branch. *See* 10 U.S.C. § 617 (2000). After reviewing the report, the Secretary submits the report "to the Secretary of Defense for transmittal to the President for his approval or disapproval." *Id.* § 618(c)(1). The statute also requires the Secretary concerned to place the names of the approved officers within particular categories (called "competitive" categories) on a promotion list in order of their seniority once the President has approved the selection board's report. *See id.* § 624(a)(1). The statute provides:

> [O]fficers on a promotion list for a competitive category *shall be promoted* to the next higher grade when additional officers in that grade and competitive category are needed. Promotions *shall be made* in the order in which the names of officers appear on the promotion list and after officers previously selected for

promotion in that competitive category have been promoted.

*Id.* § 624(a)(2) (emphases added).

The statute also provides that the Secretary may prescribe regulations that provide for the delay of an officer's appointment if "there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion." *Id.* § 624(d)(2). Pursuant to this authority, the Secretary has promulgated regulations in paragraph 23 of Secretary of the Navy's Instruction ("Secretary's Instruction") 1420.1A. The statute and regulations impose two limitations on the Secretary's authority to delay an officer's appointment in accordance with subsection 624(d). First, the officer whose appointment has been delayed must be "given written notice of the grounds for the delay, unless it is impracticable to give such written notice before the effective date of the appointment, in which case such written notice shall be given as soon as practicable." *Id.* § 624(d)(3). Second, the officer's appointment "may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay." *Id.* § 624(d)(4). The regulations include similar provisions. *See* Secretary's Instruction 1420.1A ¶ 23 (1991).

The current statute, like its predecessor, states that appointments are made "by the President, by and with the advice and consent of the Senate," *id.* § 624(c); 10 U.S.C. § 5791 (1976) (repealed 1980).[3] The Navy

---

**2.** DOPMA originally designated this grade as "commodore admiral." *See* § 105, 94 Stat. at 2851. In 1981, the grade was changed to "commodore," *see* Department of Defense Authorization Act, 1982, Pub. L. No. 97–86, § 405, 95 Stat. 1099, 1105 (1981), and it was again changed to "rear admiral (lower half)" in 1985, *see* Department of Defense Authori-

zation Act, 1986, Pub. L. No. 99–145, § 514, 99 Stat. 583, 628 (1985).

**3.** The statute provides that appointments of junior officers—to the grades of lieutenant (junior grade) or lieutenant (in the Navy) and first lieutenant or captain (in the Army, Air Force, and Marine Corps)—are "made by the

follows a formal process of nomination, confirmation, and appointment for its officers, apparently designed to take account of the constitutional requirements. In accordance with the statute, the Secretary of the Navy convenes selection boards and approves their selections. *See* 10 U.S.C. §§ 611(a), 618(a). The selections are forwarded to the Chairman of the Joint Chiefs of Staff, if required; the Secretary of Defense; and the President, who may remove names from the recommended list. *See id.* § 618(b)-(d). The President then nominates officers from the recommended list and forwards the nominations to the Senate. *See generally* Department of Defense Instruction 1320.4 (1995) (providing regulations governing the nomination processes of the military branches). If an officer is not confirmed by the Senate, his name must be removed from the promotion list. 10 U.S.C. § 629(b). Once the officer has been confirmed by the Senate, he must next be appointed. For example, when an officer is appointed to the grade of rear admiral, the Special Assistant for Flag Officer Management and Distribution prepares a letter of appointment, which can only be signed with the express approval of the Secretary of the Navy, acting for the President. This letter is issued to the appointee, along with a certificate of appointment. The appointee need not formally accept the appointment, as "[a]n officer who is appointed to a higher grade under section 624 of this title is considered to have accepted such appointment on the date on which the appointment is made unless he expressly declines the appointment." 10 U.S.C. § 626(a). The Secretary concerned determines the date of the appointment, pursuant to 10 U.S.C. § 741(d).[4] *See id.* § 624(b)(2).

## II

### A

In this case, a selection board selected the appellant for promotion to rear admiral in the fall of 1995. The President approved the selection board's recommendation, and the appellant was nominated by the President to be rear admiral on March 20, 1996. *See* 142 Cong. Rec. 5,626 (1996). The appellant was confirmed by the Senate on June 20, 1996, *see* 142 Cong. Rec. 14,827 (1996), and he was placed on the Staff Corps Flag Officer Promotion List with a projected promotion date of September 1, 1997. On January 24, 1997, the Office of the Chief of Naval Operations informed the appellant that the Secretary of the Navy was considering recommending that the appellant's name be removed

President alone." 10 U.S.C. § 624(c). The President has delegated this authority to the Secretary of Defense. *See* Exec. Order No. 12,396, § 1(c), 3 C.F.R. 234 (1983), *reprinted in* 3 U.S.C. § 301 (2000).

4. Section 741(d) provides, in pertinent part:
   (1) The date of rank of an officer of the Army, Navy, Air Force, or Marine Corps who holds a grade as the result of an original *appointment shall be determined by the* Secretary of the military department concerned at the time of such appointment. The date of rank of an officer of the Army, Navy, Air Force, or Marine Corps who holds a grade as the result of an original appointment and who at the time of such appointment was awarded service credit for prior commissioned service or constructive credit for advanced education or training, or special experience shall be determined so as to reflect such prior commissioned service or constructive service. Determinations by the Secretary concerned under this paragraph shall be made under regulations prescribed by the Secretary of Defense which shall apply uniformly among the Army, Navy, Air Force, and Marine Corps. (2) Except as otherwise provided by law, the date of rank of an officer who holds a grade as the result of a promotion is the date of his appointment to that grade.
   10 U.S.C. § 741(d)(1)-(2) (Supp. I 2001).

from the promotion list. The officer who was next in line behind the appellant for promotion to rear admiral was promoted on September 1, 1997. On September 11, 1997, Chief of Naval Personnel notified the appellant that his promotion to the grade of rear admiral was delayed. Two additional officers were promoted to rear admiral on March 1, 1998, and June 1, 1998, respectively.

On September 26, 1997, the Secretary of the Navy recommended that the appellant's name be removed from the promotion list, and the President removed the appellant's name from the promotion list on June 12, 1998, more than six months after the September 1, 1997, date on which the officer next-in-line to the appellant was promoted.[5] The reasons for the President's removal of the appellant's name from the promotion list need not detain us. In essence, the Secretary of the Navy recommended to the President that the appellant's name be removed because the appellant had received an adverse fitness report from his commanding officer, Vice Admiral Koenig, concerning the conduct of the appellant's relationship with a woman during the period after he had become separated from his wife. As discussed in greater detail below, one question is whether the appellant had automatically been promoted in accordance with subsection 624(a)(2) before the President removed his name from the promotion list. Another is whether the President was obligated to appoint him. Because the Navy viewed him as not promoted, the appellant was required to retire from active duty on February 28, 2002, when he reached the maximum permissible tenure in the grade of rear admiral (lower half).

### B

The appellant also submitted a request for MASP to the Chief of the Bureau of Medicine and Surgery on December 4, 1996. MASP is "[a]n entitlement for medical corps officers who agree to remain on active duty for a period of not less than 1 year as computed from the effective date of the [MASP] agreement," provided as additional pay to enhance the retention rate of such officers. Secretary's Instruction 7220.75C ¶ 7 (1990). The appellant sought MASP in the amount of $15,000 for the period from January 1, 1997 to December 31, 1997. An officer seeking MASP must "[d]emonstrate an adequate level of military and professional performance as determined and documented by the commanding officer." *Id.* ¶ 7a(1). The appellant's request for MASP was denied, based at least in part on Vice Admiral Koenig's adverse fitness report, on January 13, 1997. The appellant argues that the fitness report was improper and that he is entitled to MASP if the fitness report is held invalid.

### C

On March 26, 1998, the appellant applied to the Board for Correction of Naval Records ("Board"), seeking removal of Vice Admiral Koenig's fitness report from his records. The appellant also sought the restoration of his name to the promotion list, promotion to rear admiral effective September 1, 1997, and payment of MASP, arguing that the removal of his name from the promotion list and the denial of MASP

---

5. The President has the authority to "remove the name of any officer from a list of officers recommended for promotion." 10 U.S.C. § 629(a). He has delegated this authority to the Secretary of Defense, but only for grades below rear admiral (lower half) (in the Navy) and brigadier general (in the Army, Air Force, and Marine Corps). *See* Exec. Order No. 12,396, § 1(b).

were based on the allegedly improper fitness report. On January 29, 2002, the Board recommended that the Secretary of the Navy provide all of the relief sought by the appellant. However, the Assistant Secretary of the Navy for Manpower and Reserve Affairs [6] rejected the Board's recommendation and denied the appellant's requested relief.

On April 8, 2002, the appellant brought suit in the Court of Federal Claims, alleging that he had been automatically promoted to rear admiral as of September 1, 1997. He sought the corresponding pay and benefits of that grade along with the MASP of $15,000 that he had been denied. In addition, because the appellant was required to retire from active duty on February 28, 2002, he sought reinstatement to the Navy. The Court of Federal Claims granted the government's motion for summary judgment on the administrative record. The court held that the President's removal of the appellant's name from the promotion list was proper and, therefore, that he had not been promoted by operation of law. *Dysart*, slip op. at 15–16. The court also held that the appellant's claim for MASP was non-justiciable because there was no procedural error in the Navy's denial of MASP. *Id.* at 17–18 (citing *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988)). The appellant timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review legal determinations such as the Court of Federal Claims' decision to award summary judgment on the administrative record without deference, applying the same standard of review as the Court of Federal Claims. *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed.Cir.2003). Accordingly, we must uphold the Secretary's decision denying the appellant's relief unless the Secretary "acted in a manner that is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.*

I

The appellant argues that he was promoted by operation of law on September 1, 1997, when the officer next-in-line to him was promoted, and before the President removed his name from the promotion list on June 12, 1998. The appellant recognizes that the statute and regulations provide a mechanism for delaying an appointment, *see* 10 U.S.C. § 624(d); Secretary's Instruction 1420.1A ¶ 23, but he alleges that the attempt to delay his appointment was improper and ineffective under the statute and regulations. First, the appellant argues that the January 24, 1997, letter did not constitute "written notice of the grounds for the delay." 10 U.S.C. § 624(d)(3); Secretary's Instruction 1420.1A ¶ 23c. Second, he argues that the September 11, 1997, letter informing him that his promotion was delayed came after he had already been automatically promoted. Third, he argues that, even if his promotion were properly delayed, it could not have been delayed for more than six months after September 1, 1997, when the officer next-in-line to the appellant was promoted, because the Secretary did not specify any "further period of delay," 10 U.S.C. § 624(d)(4). The government responds with three arguments. First, the government argues that the statute cannot provide for automatic appointments because the appointment power is entirely

---

6. The Secretary of the Navy has delegated the responsibility for supervision of the Board to the Assistant Secretary of the Navy for Man-

power and Reserve Affairs. *See* 32 C.F.R. § 700.324(b) (2003).

within the President's discretion. Second, the government argues that the promotion was properly delayed. Finally, the government argues that any violation of section 624(d) was harmless. We need not reach the government's second two arguments because we agree with the first. The constitutional process allows the President complete discretion in choosing whether or not to appoint an officer. The statute does not and cannot alter that process by providing for automatic appointment.

## A

### 1

The constitutional appointment process for Senate-confirmed officers of the United States is most famously described in *Marbury v. Madison.* Under the Constitution, the President is given the authority to appoint officers "by and with the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2. As noted above, *Marbury* set forth three separate actions that are ordinarily required for a person, subject to Senate confirmation, to be appointed to office: the President's nomination; confirmation by the Senate; and the President's appointment. *See* 5 U.S. (1 Cranch) at 155–56. Each discrete action—nomination, confirmation, and appointment—must be made for a promotion to be effective. As an early opinion of the Attorney General correctly noted:

> To constitute an appointment under [Article II], it is necessary—1st, that the President should nominate the person proposed to be appointed; 2d, that the Senate should advise and consent that the nominee should be appointed; and, 3d, that, in pursuance of such nomination and such advice and consent, the appointment should be actually made.

The nomination is not an appointment; nor is that nomination followed by the signification of the advice and consent of the Senate, that it should be made sufficient of themselves to confer upon a citizen an office under the constitution. They serve but to indicate the purpose of the President to appoint, and the consent of the Senate that it should be effectuated; but they do not divest the executive authority of the discretion to withhold the actual appointment from the nominee. To give a public officer the power to act as such, an appointment must be made in pursuance of the previous nomination and advice and consent of the Senate, the commission issued being the evidence that the purpose of appointment signified by the nomination has not been changed.

4 Op. Atty. Gen. 217, 219–20 (1843). For judicial officers, such as those involved in *Marbury* itself, the appointment is manifested by the President's signing of a commission. *See also United States v. Le Baron,* 60 U.S. (19 How.) 73, 78, 15 L.Ed. 525 (1856). However, the granting of a commission is not always required for a Presidential appointment. The Court noted that, "[i]n order to determine whether [an officer] is entitled to [a] commission, it becomes necessary to enquire whether he has been appointed to the office." *Marbury,* 5 U.S. (1 Cranch) at 155. The Court ruled:

> The appointment being the sole act of the president, must be completely evidenced, when it is shown that he has done every thing to be performed by him.
>
> . . . .
>
> Some point of time must be taken when the power of the executive over an officer . . . must cease. That point of time must be when the constitutional power of appointment has been exer-

cised. And this power has been exercised when the last act, required from the person possessing the power, has been performed.

*Id.* at 157. In *Marbury*, the "last act to be done by the president" to show that Marbury had in fact been appointed was "the signature of the commission." *Id.* However, the Court noted that, "if an appointment was to be evidenced by any public act, other than the commission, the performance of such public act would create the officer." *Id.* at 156.

The actual process followed with respect to senior military officers follows the constitutional design. The President nominates officers from the promotion list provided to him by the military department, and those officers are confirmed by the Senate.[7] In accordance with the Constitution, the President must then make a public act of appointment for an officer to be promoted.

2

In the case of a promotion to the grade of rear admiral, the final public act of appointment is the signing and issuance of the letter of appointment by the Special Assistant for Flag Officer Management and Distribution on behalf of the President. Although the letter of appointment is typically accompanied by a certificate of appointment, which is the formal document most like a commission for promoted naval officers, the certificate is not required.

"[T]he Special Assistant must have specific authority" from the Secretary of the Navy to sign and issue a letter of appointment. (Supp. Br. for Def.-Appellee at 3.) Although there is apparently no express delegation from the President to the Sec-

retary of the Navy pursuant to 3 U.S.C. § 301 of the authority to appoint naval officers on behalf of the President, such an express delegation is not required for the letter to serve as the public act of appointment required by the Constitution. The statute provides:

This chapter [3 U.S.C. § 301 *et seq.*] shall not be deemed to limit or derogate from any existing or inherent right of the President to delegate the performance of functions vested in him by law, and nothing herein shall be deemed to require express authorization in any case in which such an official would be presumed in law to have acted by authority or direction of the President.

3 U.S.C. § 302. We have previously held that, in view of section 302, the President need not expressly delegate authority. *See Law v. United States*, 11 F.3d 1061, 1067 (Fed.Cir.1993) (holding that the Secretary of Transportation had properly removed a Coast Guard officer's name from a promotion list, even though such authority had not been expressly delegated by the President).

The Supreme Court has assumed that the authority to appoint military officers can be delegated. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 90, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief. . . . Petitioner, like every conscript, was inducted as a private. To obtain a change of that status requires appointment by *or under authority of* the President." (emphasis added)); *United States v. Moore*, 95 U.S. 760, 762, 24 L.Ed. 588 (1877) ("The place of passed assistant-surgeon is an office, and the *notification by the Secretary*

---

**7.** As noted above, appointments to the grades of lieutenant (junior grade) or lieutenant (in the Navy) and first lieutenant or captain (in

the Army, Air Force, and Marine Corps) are "made by the President alone." 10 U.S.C. § 624(c).

*of the Navy was a valid appointment to it."* (emphasis added)).

■ Our predecessor court addressed the issue more directly in *O'Shea v. United States,* 28 Ct.Cl. 392 (1893). In *O'Shea,* the Secretary of War informed O'Shea on November 21, 1887, "that the President of the United States has appointed you post chaplain in the service of the United States." *Id.* at 398. Nevertheless, another person was nominated for the position and appointed to fill the vacancy on March 5, 1888. *See id.* at 399. O'Shea claimed that he had been appointed to the position by the Secretary of War's letter, and sought pay for the position from November 24, 1887, to March 5, 1888. *See id.* The Court of Claims held that the Secretary of War's letter served as O'Shea's appointment:

> [O'Shea's] appointment is in the form then used for recess appointments to the Army; the President had the power to make the appointment, and the act of the Secretary [of War] (which expressly declares that the President had made the appointment) is conclusive evidence of the fact that it was made.

*Id.* at 401. As in *O'Shea,* the letter from the Special Assistant for Flag Officer Management and Distribution expressly states that the appointment is made by the President: "The President of the United States has appointed you to the grade of Rear Admiral (Upper Half) (O–8)." (Supp. Br. for Def.-Appellee at 2.) Thus, the signing and issuance of a letter of appointment is the final public act for a naval officer to be promoted to rear admiral. The complaint in this case does not allege that a letter of appointment promoting the appellant to rear admiral was signed and issued, and there is no evidence that any such appointment letter was in fact signed and issued.

## B

### 1

■ However, the appellant contends that he was automatically appointed to the grade of rear admiral by virtue of 10 U.S.C. § 624(a)(2). The statute provides:

> [O]fficers on a promotion list for a competitive category *shall be promoted* to the next higher grade when additional officers in that grade and competitive category are needed. Promotions *shall be made* in the order in which the names of officers appear on the promotion list and after officers previously selected for promotion in that competitive category have been promoted.

10 U.S.C. § 624(a)(2) (emphases added). Although section 624(a) refers to the "promotion" of an officer, section 624(b) provides that "[a] regular officer who is promoted under this section *is appointed* in the regular grade to which promoted." *Id.* § 624(b) (emphasis added). In addition, section 624(d) prescribes the procedure for delaying "the appointment of an officer under this section." *Id.* § 624(d). The appellant argues that, pursuant to section 624, his appointment was automatic once he was confirmed by the Senate and a rear admiral position became vacant while his name was at the top of the promotion list. However, the language of the statute does not provide for automatic appointment without action by the President. Rather, the statute provides that appointments are made "by the President, by and with the advice and consent of the Senate." *Id.* § 624(c); *see also* U.S. Const. art. II, § 2, cl. 2.

Nor does the legislative history provide any reason here to believe that Congress intended the statute to provide for automatic appointments. Both the House and Senate reports focus on providing uniform promotion procedures for all branches of

the armed forces. *See, e.g.,* H.R.Rep. No. 96–1462, at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6334 (stating that the bill was meant to "[p]rovide uniform laws for promotion procedures for officers in the separate services"); S.Rep. No. 96–375, at 1 (1979) (stating that the bill was meant to "[p]rovide uniform laws governing officer promotions in each military service"). Neither report discusses an attempt to ensure that those officers placed on promotion lists would automatically be appointed as part of such a uniform statutory scheme. In addition, the House Report states that the bill was intended to "provide common general authority for the permanent appointment of officers *by the President* with the advice and consent of the Senate." H.R.Rep. No. 96–1462, at 36, *reprinted in* 1980 U.S.C.C.A.N. at 6367 (emphasis added). Therefore, the legislative history does not show that Congress intended to provide for automatic appointments.

In any event, Congress could not have permissibly altered the appointment process set forth in the Constitution by providing for automatic appointments. The limited role for Congress in the appointment process is specified in the Constitution itself, which provides only that Congress may vary the process for "inferior Officers." U.S. Const. art. II, § 2, cl. 2 ("[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."). Protecting the role of the President in the appointment process from legislative encroachment was in fact one of the goals of the Constitutional Convention. *See Buckley v. Valeo,* 424 U.S. 1, 128–31, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *see also Weiss,* 510 U.S. at 184–87, 114 S.Ct. 752 (Souter, J., concurring); *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868,

883–85, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

In *Buckley,* the Court considered the constitutionality of the Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93–443, § 208(a), 88 Stat. 1263, 1280–81, which provided for a Federal Election Commission composed of six voting members, two of whom were to be appointed by the President pro tempore of the Senate, and two of whom were to be appointed by the Speaker of the House of Representatives. *See Buckley,* 424 U.S. at 126, 96 S.Ct. 612. The Court held this provision unconstitutional because the members of the commission, who qualified as officers of the United States, were not appointed pursuant to the constitutional appointment process. *See id.* ("[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of [Article II].").

Similarly, the Court in *Springer v. Philippine Islands,* 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928), considered Congress's attempt in the Organic Act, ch. 416, 39 Stat. 545 (1916), to create a government for the Philippine Islands in which the legislative branch had the power to "provide for the appointment and removal of the heads of the executive departments by the Governor General." *Springer,* 277 U.S. at 201, 48 S.Ct. 480 (quoting Organic Act, ch. 416, § 22, 39 Stat. 545, 553 (1916)). The Court held this provision unconstitutional, stating: "It may be stated . . ., as a general rule inherent in the American constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise . . . executive . . . power." *Id.* The Court further ruled: "Legislative power, as distinguished from executive

power, is the authority to make laws, but not to enforce them or *appoint the agents charged with the duty of such enforcement.* The latter are executive functions." *Id.* at 202, 48 S.Ct. 480 (emphasis added). The Court has consistently prohibited attempts by Congress to exercise the appointment power, which properly lies with the President, holding that, "while Congress may create an office, it cannot appoint the officer." *Weiss,* 510 U.S. at 174, 114 S.Ct. 752 (quoting *Shoemaker,* 147 U.S. at 300, 13 S.Ct. 361). Thus, military officers must be appointed pursuant to the constitutional process, which requires appointments at the discretion of the President, not automatic appointments pursuant to statute.[8]

### 2

Finally, even though the statute cannot provide for automatic appointments, we must consider whether the statute can be read as compelling appointment in accordance with the statutory scheme.

▮ In general, the subject of military promotions is beyond the competence of courts to review. *See, e.g., Orloff,* 345 U.S. at 91, 73 S.Ct. 534; *Adkins v. United States,* 68 F.3d 1317, 1324 (Fed.Cir.1995) ("Courts will not interject themselves into the promotion process."). However, the Military Pay Act, 37 U.S.C. § 204 (2000), provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statute, or a regulation,

has denied military pay. *See, e.g., Holley v. United States,* 124 F.3d 1462, 1465 (Fed. Cir.1997); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 810–11 (1979) (*en banc*). The Corrections Board statute, 10 U.S.C. § 1552, provides for correction of military records if a promotion has been improperly denied (and for the convening of special selection boards in appropriate cases to determine whether the officer should be promoted), and for judicial review of the Board's decision. *See Richey v. United States,* 322 F.3d 1317, 1323–25 (Fed.Cir.2003); *Porter v. United States,* 163 F.3d 1304, 1311–12 (Fed.Cir.1998); *Sanders,* 594 F.2d at 810–11; *see also Adkins,* 68 F.3d at 1326; *Law,* 11 F.3d at 1064. Because the Military Pay Act is a money-mandating statute, the general rule "that one is not entitled to the benefit of a position until he has been duly appointed to it," *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), is inapplicable.[9] In such cases, redress may be afforded for a promotion improperly denied. It is apparently assumed that the constitutionally-mandated steps in the appointment process—nomination, confirmation, and actual appointment—would be followed absent improper action by subordinate officials, and that the rare exercise of Presidential (or Senate) discretion not to make the appointment creates no Article III bar to the action in the Court of Federal Claims. *See Glidden Co. v. Zdanok,* 370 U.S. 530, 568–71, 82

---

8. Although Congress may permissibly change an officer's pay and direct that an officer be paid as though he had been appointed to a higher grade, it cannot change an officer's grade, which requires an appointment. *See Wood v. United States,* 107 U.S. (17 Otto) 414, 417, 18 Ct.Cl. 761, 2 S.Ct. 551, 27 L.Ed. 542 (1882).

9. *Testan* prohibited a claim for retroactive benefits pursuant to the Classification Act, 5 U.S.C. § 5101 *et seq.* (2000), which the Court held was not money-mandating, as is required

for the Court of Federal Claims to take jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (2000). 424 U.S. at 399–400, 96 S.Ct. 948. The Court held that, because the Classification Act was not money-mandating, it did not alter the "established rule ... that one is not entitled to the benefit of a position until he has been duly appointed to it." *Id.* at 402, 96 S.Ct. 948. Unlike *Testan,* there is a money-mandating statute here—the Military Pay Act.

S.Ct. 1459, 8 L.Ed.2d 671 (1962); *see also Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–14, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

■ The appellant argues that the Secretary's action here, declining to follow the Board's decision recommending his promotion, is contrary to law. This case, however, is fundamentally different from the cases on which the appellant relies. The appointment was not derailed as a result of action by a subordinate official acting in his own authority, but by the President, who decided not to make the appointment. Such action by the President or an officer acting for the President is simply unreviewable. *See, e.g., Orloff*, 345 U.S. at 92, 73 S.Ct. 534; *Curry v. United States*, 221 Ct.Cl. 741, 609 F.2d 980, 983 (Ct.Cl.1979); *Cooper v. United States*, 203 Ct.Cl. 300, 303 (1973); *D'Arco v. United States*, 194 Ct.Cl. 811, 441 F.2d 1173, 1175 (1971).

■ The Constitution contemplates that, after confirmation, the President may refuse to execute the appointment. All Presidential appointments, particularly those to senior positions, involve a discretionary decision. What the Supreme Court has said with respect to appointments generally applies particularly in this context:

> The appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the applicant; whether or not he is the proper one to discharge the duties of the position. Therefore it is one of those acts over which the courts have no general supervising power.

*Keim v. United States*, 177 U.S. 290, 293, 35 Ct.Cl. 628, 20 S.Ct. 574, 44 L.Ed. 774 (1900). Our predecessor court has specifi-cally held that the President or an officer acting for him may remove an officer's name from a promotion list "at any time before the appointment is consummated." *D'Arco*, 441 F.2d at 1175. In *D'Arco*, the Secretary of the Navy, acting for the President, removed D'Arco's name from a promotion list after he had been confirmed by the Senate. *Id.* at 1174. The Court of Claims upheld this action, holding that, in accordance with *Marbury*, the President (and the Secretary acting for the President) "could still refuse to complete the appointment, after Senate confirmation, by failing to prepare or sign the commission." *Id.* at 1175; *see also Doggett v. United States*, 207 Ct.Cl. 478, 482 (1975) ("We believe that in the absence of any contrary requirement, a power . . . to recommend a promotion, implies a power to withdraw the recommendation *at any time before it is acted on.*" (emphasis added)).

■ The current statutory language itself does not clearly compel the President to appoint military officers. As the appellant notes, the statute provides that officers *"shall be promoted* to the next higher grade when additional officers in that grade and competitive category are needed." 10 U.S.C. § 624(a)(2) (emphasis added); *see also* S.Rep. No. 96–375, at 21 ("[A]fter confirmation by the Senate and unless a promotion is delayed for good reason, *promotions shall be made* to fill vacancies in order of seniority." (emphasis added)).

This language contrasts with the language of the previous statute, which provided that "[t]he President *may fill vacancies* in any grade in the line of the Regular Navy" in accordance with the statutory provisions. 10 U.S.C. § 5780 (1976) (repealed 1980) (emphasis added). Our predecessor court interpreted the previous statute's language in *D'Arco* as permitting

the President to remove an officer's name from a promotion list "at any time before the appointment is consummated." 441 F.2d at 1175; *see also Doggett,* 207 Ct.Cl. at 482. In *D'Arco,* the court held that the provision that "[t]he President may terminate any temporary appointment," 10 U.S.C. § 5779 (1964) (repealed 1980), permitted the President (or the Secretary acting for the President) to withhold a commission. 441 F.2d at 1175.

■ Although DOPMA changed the statutory language, there is no indication in the legislative history that Congress intended to cabin the President's authority or to overrule our predecessor court's decision in *D'Arco.* As noted above, the House Report states that the bill was intended to "provide common general authority for the permanent appointment of officers by the President with the advice and consent of the Senate." H.R.Rep. No. 96–1462, at 36 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6367. Indeed, the statute provides that "[t]he President may remove the name of any officer from a list of officers recommended for promotion by a selection board convened under this chapter." 10 U.S.C. § 629(a). In any event, Congress does not have the authority to require the President to exercise his appointment power; such authority would be akin to an exercise by Congress of the appointment power itself, which is prohibited.

Nor does the judiciary have a role in reviewing such decisions. The President's decision not to appoint is a discretionary act that cannot be reviewed by a court. *See, e.g., Marbury,* 5 U.S. (1 Cranch) at 165–67. In *Marbury,* the Court held that it could not review the President's exercise of his appointment power because it is discretionary: "The power of nominating to the senate, and the power of appointing the person nominated, are political powers,

to be exercised by the president according to his own discretion." *Id.* at 166–67. Similarly, the Court in *Dalton v. Specter,* 511 U.S. 462, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994), held that it could not review the President's discretionary determination of which military bases to close pursuant to the Defense Base Closure and Realignment Act of 1990, 10 U.S.C. § 2687, even if subordinate officials had failed to comply with legal requirements. *Id.* at 476–77, 114 S.Ct. 1719. The Court held: "Where a statute ... commits decision-making to the discretion of the President, judicial review of the President's decision is not available." *Id.* at 477, 114 S.Ct. 1719. The same is necessarily true where the President is afforded discretion by the Constitution itself. The President's decision here whether or not to exercise his appointment power is discretionary, and we hold that the President cannot be compelled to appoint military officers.

Therefore, the appellant was never appointed to the grade of rear admiral, and we cannot review the President's decision not to appoint him. Because he was never appointed, the appellant is not entitled to the pay and benefits he would have received if he had been promoted to that grade. We therefore affirm the Court of Federal Claims' denial of that relief.

## II

■ Finally, the appellant contends that he is entitled to $15,000 of MASP because the pay was denied on the basis of Vice Admiral Koenig's improper fitness report. However, that issue is not justiciable. The Court of Federal Claims may only review a denial of MASP "for compliance with established procedures"; it may not review "the substantive merits of the decision." *Voge,* 844 F.2d at 779. In *Voge,* we held that "there are no tests or standards for the court to apply in deter-

mining whether the decision to terminate [M]ASP is correct. Instead, Congress provided only that the determination to deny [M]ASP may be made 'at any time' by the Secretary." *Id.* at 780 (quoting 37 U.S.C. § 302(c)(2)) (citations omitted). The appellant argues that Vice Admiral Koenig violated regulations in formulating the fitness report, but he does not contend that the Secretary violated established procedures in denying MASP. Therefore, the Court of Federal Claims correctly held that it could not review the Secretary's decision to deny the appellant's request for MASP because the issue was not justiciable. Accordingly, the court's denial of the appellant's claim for MASP is affirmed.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

*AFFIRMED.*

## COSTS

No costs.