# Promotions of Judge Advocates General Under Section 543 of the National Defense Authorization Act for Fiscal Year 2008

Section 543 of the National Defense Authorization Act for Fiscal Year 2008 does not automatically advance incumbent Judge Advocates General to a three star general officer grade, but rather such promotion requires a separate appointment by the President, by and with the advice and consent of the Senate.

The incumbent Judge Advocates General may continue to serve out their full terms in their present two star grades, though the President may nominate them for promotion to the higher grade at any time, if he so chooses.

April 14, 2008

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF DEFENSE

Section 543 of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, 114 (2008) ("NDAA"), amended sections 3037(a), 5148(b), and 8037(a) of title 10 of the United States Code to provide that each of the Judge Advocates General ("TJAGs") of the Army, Navy, and Air Force has the grade of lieutenant general or vice admiral, depending on the service (in each case, a three star general officer grade), while serving as TJAG.[1] Before enactment of the NDAA, the TJAGs were required to hold officer grades of "not lower than" two stars while so serving, 10 U.S.C. §§ 3037(a), 5148(b), 8037(a) (2006), and each of the incumbent TJAGs is currently a two star officer. Your office has asked for our opinion whether section 543 automatically advances the incumbent TJAGs to the three star grade or whether such promotion requires separate appointment by the President, by and with the advice and consent of the Senate.[2]

---

[1] For example, with respect to the Navy TJAG, section 5148(b) of title 10, as amended by section 543 of the NDAA, now provides:

> There is in the executive part of the Department of the Navy the Office of the Judge Advocate General of the Navy. The Judge Advocate General shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. He shall be appointed from judge advocates of the Navy or the Marine Corps who are members of the bar of a Federal court or the highest court of a State and who have had at least eight years of experience in legal duties as commissioned officers. *The Judge Advocate General, while so serving, has the grade of vice admiral or lieutenant general, as appropriate.*

10 U.S.C. § 5148(b) (as amended by the NDAA) (emphasized language added by section 543).

[2] Letter for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from William J. Haynes II, General Counsel, Department of Defense (Jan. 20, 2008).

The new language added by section 543 speaks in the present tense: "The Judge Advocate General, while so serving, *has* the grade of" a three star general officer (emphasis added). It might be suggested that this language—by specifying that each TJAG "has" the three star grade "while so serving" as TJAG—has the effect of automatically promoting the incumbent TJAGs to the higher, three star officer grade without any separate appointment. We believe, however, that this is not the better interpretation of the statute (and would raise significant constitutional issues). Rather, we believe that section 543 is best read to preserve the traditional understanding, consistent with similar provisions throughout title 10 and the settled treatment of grade promotions as appointments to constitutional offices, that TJAG promotions to the higher specified officer grade will occur through separate appointments by the President, by and with the advice and consent of the Senate. Under this reading, the effect of section 543 is to provide that, whereas under the prior statute the President had discretion to appoint TJAGs to an officer grade of two stars or higher, now when the President nominates and appoints officers to TJAG positions, he must also nominate and appoint them to the specified three star grade. We do not believe that section 543 can reasonably be read to terminate the current terms of the incumbent two star TJAGs or (what would be similarly problematic) to require that the President nominate the incumbent TJAGs for promotion to three star grade before the end of their current terms—though the President, of course, may choose to do so.

Commissioned military officers are "Officers of the United States" for purposes of the Appointments Clause of the Constitution, *see Weiss v. United States*, 510 U.S. 163, 170 (1994); *Shoemaker v. United States*, 147 U.S. 282, 301 (1893), and each promotion of a military officer from one grade level to the next is considered a separate appointment to a new office, *see Dysart v. United States*, 369 F.3d 1303, 1306 (Fed. Cir. 2004) (permanent grade promotion); *D'Arco v. United States*, 441 F.2d 1173 (Ct. Cl. 1971) (en banc) (temporary grade promotion). "Promotion . . . is as much or as little within the President's constitutional power of appointment as an original appointment, and is subject . . . to the same considerations." *Issuance of Commission in Name of Deceased Army Officer*, 29 Op. Att'y Gen. 254, 256 (1911); *accord Promotion of Marine Officer*, 41 Op. Att'y Gen. 291, 292 (1956) (considering the constitutionality of restrictions on the President's authority temporarily to promote a commissioned officer by recess appointment).

Accordingly, the promotion of a military officer to a higher grade (like any appointment to a new office in the Executive Branch) requires appointment by the President, by and with the advice and consent of the Senate, unless Congress, with respect to "inferior Officers," has vested the appointment power in "the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, § 2, cl. 2, or unless the President appoints an officer pursuant to the requirements of the Recess Appointments Clause, *id.* art. II, § 2, cl. 3. Traditionally, each promotion of a senior military officer has been done by such a procedure—

presidential appointment with Senate confirmation (or, on occasion, recess appointment pursuant to the Constitution)—whether or not the promotion is carried out pursuant to specific statutory authority. *See Promotion of Marine Officer*, 41 Op. Att'y Gen. at 291–92; *see also Promotion of Army Officers*, 30 Op. Att'y Gen. 177, 179 (1913) ("The provisions of the Constitution, therefore, operate directly upon this [grade promotion], and, without the intervention of Congress, obliges the President to nominate, and by and with the advice and consent of the Senate, to appoint thereto."); *Issuance of Commission in Name of Deceased Army Officer*, 29 Op. Att'y Gen. at 256 ("Promotion in the Army is . . . an *appointment* to a higher office therein; and this fact is illustrated and confirmed by the long established practice of submitting nominations for promotion in the Army to the Senate for confirmation and of thereafter issuing a commission for the higher office.").

This traditional approach to the appointment of military officers and their promotion to higher officer grades is reflected throughout title 10. Section 601, for example, authorizes the President to designate particular positions of importance and responsibility within the services to carry senior officer grades of three or four stars (lieutenant general/vice admiral or general/admiral, respectively), and provides that "[a]n officer assigned to any such position has the grade specified for that position if he is appointed to that grade by the President, by and with the advice and consent of the Senate." 10 U.S.C. § 601(a) (2000). The express distinction in section 601 between the "assign[ment]" to the "position" in question and the "appoint[ment]" to the specified officer "grade" associated with that position reflects the traditional understanding that the officer's assignment or appointment to a specific military position is distinct from his appointment to the higher grade associated with that position. *See, e.g.*, 152 Cong. Rec. 4640 (2006) (reporting nominations received March 30, 2006) (nomination of Lt. Gen. Michael D. Rochelle "for appointment in the United States Army to the grade indicated while assigned to a position of importance and responsibility under title 10, U.S.C., section 601"). Similarly, section 624, which provides for the promotion of officers recommended for promotion by selection boards convened under section 611, makes it clear that such promotions are "[a]ppointments" and specifies that "[a]ppointments under this section shall be made by the President, by and with the advice and consent of the Senate, except that appointments under this section in the grade of first lieutenant or captain, in the case of officers of the Army, Air Force, or Marine Corps, or lieutenant (junior grade) or lieutenant, in the case of officers of the Navy, shall be made by the President alone." *Id.* § 624(c).

Several provisions of title 10 that establish particular positions for military officers have for decades specified the officer grade associated with the position using language essentially identical to section 543's, and the promotions to these officer grades have long been made through separate appointments by the President, by and with the advice and consent of the Senate. For example, section 152, establishing the position of Chairman of the Joint Chiefs of Staff, provides

that "[t]he Chairman, *while so serving, holds* the grade of general or, in the case of an officer of the Navy, admiral." *Id.* § 152(c) (emphasis added). Although section 152 specifically provides for appointment to the position of Chairman of the Joint Chiefs (by the President with Senate confirmation), *id.* § 152(a), nominations for appointment to this position have also traditionally included separate nominations for the officer grade associated with the position. *See, e.g.*, 153 Cong. Rec. 17,916 (2007) (reporting nominations received June 28, 2007) (nomination of Adm. Michael G. Mullen "for appointment as the Chairman of the Joint Chiefs of Staff *and appointment to the grade indicated* [admiral] while assigned to a position of importance and responsibility under title 10, U.S.C., sections 152 and 601 [Chairman of the Joint Chiefs]") (emphasis added). The same is true for the position of Vice Chairman of the Joint Chiefs. *See* 10 U.S.C. §§ 154(a) (appointment to position of Vice Chairman by the President with Senate confirmation), 154(f) (Vice Chairman, "while so serving, holds the grade of general," etc.); *see, e.g.*, 153 Cong. Rec. 17,916, 17,916–17 (2007) (reporting nominations received June 28, 2007) (nomination of Gen. James E. Cartwright "for appointment as the Vice Chairman of the Joint Chiefs of Staff *and appointment to the grade indicated* while assigned to a position of importance and responsibility under title 10, U.S.C., sections 601 and 154") (emphasis added). It is also true for a number of other positions in the military service. *See, e.g.*, 10 U.S.C. §§ 3036(b) (2000) (providing for appointment of several officers, including Surgeon General of the Army, by the President with Senate confirmation), 3036(b)(2) (specifying that the Surgeon General, "*while so serving, has the grade of lieutenant general*") (emphasis added); 153 Cong. Rec. 27,258, 27,260 (2007) (reporting nominations received on Oct. 16, 2007) (nomination of Maj. Gen. Eric Schoomaker "for appointment as the Surgeon General, United States Army, *and appointment to the grade indicated* while assigned to a position of importance and responsibility under title 10, U.S.C., sections 601 and 3036") (emphasis added).

Indeed, with respect to the appointment of the incumbent Air Force TJAG, essentially the same practice was followed under the previous TJAG appointment provision, which, before enactment of section 543, provided that "[t]he Judge Advocate General, while so serving, *shall hold* a grade not lower than [a two star grade]." *E.g.*, 10 U.S.C. § 8037(a) (2006) (Air Force TJAG) (emphasis added). *See, e.g.*, 152 Cong. Rec. 2064, 2065 (2006) (reporting nominations confirmed on Feb. 16, 2006) (nomination of Maj. Gen. Jack L. Rives "for appointment in the regular Air Force of the United States to the position *and grade indicated* under title 10, U.S.C., section 8037") (emphasis added).[3] Although the phrase "shall hold" might in some sense be even more imperative than the current "has" with respect to the grade specification for TJAG positions, still a distinction was made,

---

[3] Major General Rives held the permanent grade of major general at the time of his appointment to the office of TJAG and to the grade of major general while serving in that office.

for appointment purposes, between the TJAG position itself and the associated grade.

We recognize that TJAG positions might not be designated as positions "of importance and responsibility" under section 601 and that TJAGs might not always be selected for promotion by selection boards convened under section 611, *see, e.g.*, 10 U.S.C. § 3037(d) (2000) (providing that in selecting an officer for recommendation as Army TJAG, the Secretary of the Army is to propose an officer recommended for promotion by a board of officers that, "insofar as practicable," is subject to the procedures applicable to selection boards under section 611). Therefore, the appointment of TJAGs to a higher officer grade will not necessarily rest on the separate statutory authority of section 601 (as do grade promotions of officers serving in positions designated as positions of importance and responsibility) or section 624 (as do grade promotions of officers recommended for promotion by selection boards). To the extent TJAGs are selected for promotion by selection boards convened under section 611, section 624 would govern their promotions to the three star grade, and it, like section 601, provides for grade promotion by appointment of the President, by and with the advice and consent of the Senate. *Id.* § 624(c). If, however, there is no applicable statute specifically providing for the appointment to the separate office of the higher officer grade, the Appointments Clause of the Constitution supplies all needed authority, and its default rule specifies appointment by the President, by and with the advice and consent of the Senate. *Promotion of Army Officers*, 30 Op. Att'y Gen. at 179; *see* U.S. Const. art. II, § 2, cl. 2.

We assume that Congress was aware when it enacted section 543 of the NDAA of the established understanding that grade promotions require distinct appointments and the traditional appointment practice under similar provisions of title 10. *See Comm'r v. Keystone Consol. Indus., Inc*., 508 U.S. 152, 159 (1993); *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978). Because the amended TJAG grade specification provisions track closely the corresponding language used for a number of the other military positions discussed above, we believe that section 543 is best read, consistent with the related provisions of title 10, to preserve the traditional understanding and settled practice with respect to such promotions for TJAGs. Nothing in the legislative history of the NDAA suggests Congress's intent to do otherwise. Moreover, interpreting section 543 to dispense with the appointment process and provide for grade promotions by operation of law would raise significant constitutional concerns because Congress may not appoint an officer to a constitutional office. *See Shoemaker*, 147 U.S. at 300–01 ("[W]hile Congress may create an office, it cannot appoint the officer."); *Dysart*, 369 F.3d at 1314 (construing section 624 of title 10 not to provide for promotions by operation of law because such a reading would conflict with the Constitution). Accordingly, we

conclude that the TJAG grade promotion provisions, as amended by section 543, contemplate separate appointment of TJAGs to the higher specified officer grade.[4]

We believe the incumbent TJAGs may continue to serve out their full terms in the two star grade, though the President may, of course, nominate them for promotion to the higher grade at any time, if he so chooses. Applying the new grade specification to the incumbents could be deemed to remove them from office before the end of their current terms because they do not hold the three star grade now specified for their positions. That result is certainly not demanded by the language of section 543, finds no support in its legislative history, and should be avoided because it is well established that Congress may not remove an executive officer from office other than by impeachment (unless the office itself is legitimately abolished). *See Myers v. United States*, 272 U.S. 52, 122 (1926); *Bowsher v. Synar*, 478 U.S. 714, 723 (1986). Similarly, we believe the amended statutes are not reasonably read to require the President to submit nominations for grade increases for the current TJAGs in mid-term. Again, neither the statute's text nor its legislative history requires that result. Usually, we construe appointment statutes to apply prospectively (here to any new appointment of an officer to a term as TJAG made after enactment of the statute). *See*, *e.g.*, *Applicability of Appointment Provisions of the Anti-Drug Abuse Act of 1988 to Incumbent Officeholders*, 12 Op. O.L.C. 286, 288 (1988). In any event, as noted, if the statute were read to require the President to nominate particular individuals for appointment to particular military offices, like the specified higher officer grade, such an interpretation would raise significant constitutional concerns, as the President must retain sufficient discretion in selecting nominees for Executive Branch offices. *See Issuance of Commission in Name of Deceased Officer*, 29 Op. Att'y Gen. at 256 ("Congress may point out the general class of individuals from which an appointment must be made, if made at all, but it cannot control the President's discretion to the extent of compelling him to commission a designated individual."); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 483 (1989) (Kennedy, J., concurring) (the Appointments Clause gives "[n]o role whatsoever . . . either to the Senate or to Congress as a whole in the process of choosing the person who will be nominated for appointment").

In sum, we conclude that sections 3037(a), 5148(b), and 8037(a) of title 10, as amended by section 543 of the NDAA, continue to contemplate separate appointment by the President, by and with the advice and consent of the Senate, for TJAG promotions to the higher officer grade. This interpretation is consistent with the

---

[4] That Congress has sometimes used more explicit language to require separate appointment to a specified grade, such as for the appointment of the Assistant TJAG of the Army to a permanent two star grade, *see* 10 U.S.C. § 3037(a) (2000) ("An officer appointed as Assistant Judge Advocate General [of the Army] who holds a lower regular grade shall be appointed in the regular grade of major general."), does not negate the settled understanding of the "while so serving" grade provisions that apply to the TJAGs and various other officer positions in title 10.

traditional understanding that each military officer grade is a separate office and each promotion of a senior military officer to a higher officer grade is made by presidential appointment, by and with the advice and consent of the Senate. It is also consistent with prior TJAG appointment procedures and with related provisions of title 10 providing for the appointment and promotion of military officers in various grades and positions. The nomination and appointment of a TJAG to the higher three star officer grade may be done simultaneously with the nomination and appointment of the officer to the TJAG position itself. The President is not required by section 543 to nominate the incumbent TJAGs to the three star grade before their current terms end but is free to do so at any time.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*