**David E. TIPPETT, Pro Se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 07–624 C.

United States Court of Federal Claims.

April 15, 2011.

See also 28 Fed.Appx. 942.

David E. Tippett, Baton Rouge, LA, pro se.

Douglas K. Mickle, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, Washington, DC, for defendant. Major Jennifer Bottoms, United States Army Litigation Division, Arlington, VA, of counsel.

1. Plaintiff did not request oral argument when he responded to defendant's dispositive motions. Plaintiff later requested oral argument, with no explanation of the need for oral argument, when filing his response to the court's order for supplemental briefing. The parties' initial briefs, as complemented by the parties' supplemental briefs, thoroughly discuss the legal issues before the court. Plaintiff, a practicing attorney, had ample opportunity to argue his case.

2. The facts upon which the parties rely are undisputed.

3. Success was not obtained until this court had twice been reversed by the United States Court of Appeals for the Federal Circuit. *See Tippett v. United States*, 185 F.3d 1250 (Fed.Cir.1999) (*Tippett I*); *see also Tippett v. United States*, 28 Fed.Appx. 942 (Fed.Cir.2001) (*Tippett II*).

4. Plaintiff is a practicing attorney who is representing himself *pro se*. On January 29, 2010,

## OPINION

BUSH, Judge.

This military pay case is before the court on defendant's motion to dismiss, under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), and on defendant's motion for judgment on the administrative record, under RCFC 52.1. These motions have been fully briefed. The court also ordered supplemental briefing on one of plaintiff's claims.[1] For the reasons stated below, defendant's motions are granted.

## BACKGROUND[2]

This case has its origins in an earlier military pay case, one brought before this court by plaintiff in 1996. Plaintiff eventually prevailed in that case and received a judgment in his favor.[3] *Tippett v. United States*, No. 96–308C (Fed.Cl. Apr. 23, 2002) (*Tippett III*). Now, plaintiff has brought suit for what he terms "contempt of court" and additional military pay. Compl. at 1.[4] The complaint basically contains two distinct sets of claims. One set of plaintiff's claims is related to the delays he encountered before receiving satisfaction of the judgment issued in *Tippett III*, a set of claims which includes monetary claims and prayers for equitable relief. Plaintiff's other set of claims encompasses promotion-related pay and benefits he did not and will not receive because of the failure of the United States Army to promote

plaintiff attempted to file an amended complaint, which presented only the amended paragraphs plaintiff wished to substitute for a few of the paragraphs in his original complaint. The court rejected this filing, and specifically instructed plaintiff to file an amended complaint in one comprehensive document. Order of February 4, 2010, at 2 n. 1. This instruction went unheeded, and plaintiff again filed an incomplete amended complaint. Thus, the amended complaint and plaintiff's original complaint must be read together to discover the full extent of plaintiff's claims. The court will attempt to address all of plaintiff's substantive claims, despite the irregular format of the complaint. Depending on the issue at hand, the court may cite to the original complaint (Compl.), filed August 22, 2007, or the amended complaint (Am. Compl.), filed February 25, 2010.

him to the higher ranks of lieutenant colonel and colonel. The court turns first to plaintiff's earlier suit before this court.

## I. Involuntary Discharge

Mr. David E. Tippett[5] was serving as a captain in the United States Army in Germany when his superior officers became aware of an "extra-marital relationship," which, in their view, "had contributed to the degradation of Tippett's unit and had prevented Tippett from properly motivating his subordinates." *Tippett v. United States*, 185 F.3d 1250, 1251–52 (Fed.Cir.1999) (*Tippett I*). Mr. Tippett admitted to the affair and was relieved of his duties as Public Affairs Officer. *Id.* at 1251. Also, "because he was the subject of an investigation that could lead to disciplinary action ..., [he was informed that] his promotion to major, scheduled for February 1, 1989, would be delayed." *Id.* at 1252.

After consultation with Army defense attorneys, Mr. Tippett chose an honorable discharge over other options available to him at the time. Upon receipt of his honorable discharge on June 1, 1990, his discharge papers included a notation that the discharge involved "Misconduct, Moral or Professional Dereliction." *Id.* at 1253 (internal quotations omitted). His discharge also prevented him from entering the United States Army Reserves. *Id.* at 1253–54.

Mr. Tippett sought relief from the Army Board for Correction of Military Records (ABCMR or board), and while that application was pending, also sought relief in this court. *Id.* at 1254. Although both the ABCMR and this court denied his applications for relief, his case before this court was appealed to the United States Court of Appeals for the Federal Circuit, which found that his discharge was involuntary and directed this court to provide the following relief:

(i) cancellation of his discharge; (ii) reinstatement in the Army at the grade of captain as of the date of his discharge; (iii) correction of his records to reflect active

duty service up to the date of reinstatement; (iv) back pay from the date of his discharge to reinstatement (less appropriate offsets); and (v) such other relief as is appropriate.

*Tippett v. United States*, 28 Fed.Appx. 942, 945 (Fed.Cir.2001) (*Tippett II*). On receipt of the mandate from the Federal Circuit, this court duly entered judgment for Mr. Tippett, ordering that "defendant shall cancel plaintiff's discharge, reinstate him at the grade of Captain, correct his records to reflect active duty service to the date of reinstatement, and give plaintiff back pay from the date of discharge to reinstatement (less appropriate offsets)." *Tippett III*, J. at 1.

## II. Partial Satisfaction of the Judgment

Mr. Tippett contacted this court in December 2002 and attempted to file a motion to compel "the Secretary of the Army to personally appear to compel the Government to comply with the Court's Judgment." Compl. ¶ 14. The court returned plaintiff's motion to him unfiled, noting that the case had been closed for some months and that the court "assume[d] that the Secretary of the Army will insure that [its] obligations are met." *Tippett v. United States*, No. 96–308C (Fed. Cl. Jan. 2, 2003) (order). Mr. Tippett received orders on January 4, 2003 revoking his discharge, reinstating him as captain and commanding that he report for duty on January 16, 2003. Compl. ¶ 17. Thus, the Army both cancelled plaintiff's discharge and reinstated him as captain, in compliance with the judgment in *Tippett III*.

It was not until November 2005 that Mr. Tippett received word of the back pay amount that would satisfy this court's judgment. Regarding the period of time beginning on June 2, 1990 through January 15, 2003, the Army stated that his back pay for that period was $820,064.96, which, once offsets and taxes were deducted, resulted in a sum due Mr. Tippett of $293,438.85. Compl. ¶ 28. Several aspects of the calculation were contested by plaintiff. *Id.* ¶¶ 29–32.

---

5. Because Mr. Tippett's rank varied during the periods of time referenced in his suit, for the sake of simplicity the court will refer to him as Mr. Tippett. The court intends no disrespect thereby to Mr. Tippett, who was retired from the Army with the rank of major.

Also in 2005, Mr. Tippett obtained a retroactive promotion to the rank of major, effective March 1, 1989. Compl. ¶ 24. He received back pay for the difference between a major's and a captain's pay, for July 1, 2004 through June 30, 2005. *Id.* As of July 1, 2005, Mr. Tippett began receiving the pay of a major.

According to plaintiff, his military records were not fully corrected until August 2006, as regards the corrections ordered by this court in *Tippett III.* Compl. ¶ 37. Also in 2006, Mr. Tippett was considered for promotion to lieutenant colonel, but did not receive that promotion.[6] *Id.* ¶¶ 34–35. On April 30, 2007, Mr. Tippett was retired from the Army at the rank of major due to his time in rank. *Id.* ¶ 59. On August 22, 2007, Mr. Tippett, never having received the back pay he was due for the period of time from June 2, 1990 through January 15, 2003, filed suit in this court.

### III. Back Pay Finally Paid, and Demand for Delay Damages

In late 2007, defendant and plaintiff negotiated a figure that represented back pay, minus allowable offsets and taxes, that was owed Mr. Tippett. Am. Compl. ¶ 69. On January 16, 2008, plaintiff was paid $318,160.45 by the Army. *Id.* ¶ I. Plaintiff asserts that his back pay award should have been much higher, to compensate for the effects of the Army's delay in making payment. *Id.* at 11–12. Indeed, plaintiff asks the court to impose contempt damages upon defendant because of the delay in payment. *Id.* at 11.

### IV. Promotion Claim (and Retirement Pay Claim)

Plaintiff asserts that he should have been promoted to lieutenant colonel and colonel by the Army. Am. Compl. ¶ 82. For this reason, Mr. Tippett asserts that he is owed back pay to account for the difference in pay between these ranks and the rank of major, and that he is entitled to reinstatement. *Id.* at 12. In the alternative, in the event reinstatement is not ordered, Mr. Tippett requests back pay and back retirement pay to reflect his constructive promotions to lieutenant colonel and colonel. *Id.* at 12–13. This suit was stayed while Mr. Tippett brought his promotion claim before the ABCMR. The ABCMR denied his application for relief on September 24, 2008. *Id.* ¶¶ 75–76.

### V. Miscellaneous Claims

Plaintiff asks this court to order defendant to remove and destroy copies of his June 1, 1990 discharge papers held by federal and state government agencies and courts. Am. Compl. at 11. In addition, plaintiff seeks fees and expenses for his earlier case before this court, and fees and expenses for prosecuting this action. *Id.* at 12. Plaintiff relies both on the Equal Access to Justice Act, 28 U.S.C. § 2412 (2006), and this court's inherent powers, in support of his claim for fees and expenses.[7]

### DISCUSSION

### I. Standards of Review

#### A. *Pro Se* Litigants

■ The court acknowledges that Mr. Tippett is proceeding *pro se,* although he is a practicing attorney. A *pro se* plaintiff is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.,* 828 F.2d 1555, 1558 (Fed.Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings.[8] *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint, plain-

---

**6.** The court reserves a more complete discussion of the promotion issue for the discussion section of this opinion.

**7.** Mr. Tippett's reliance on the court's inherent powers for an award of his litigation expenses did not become clear until he filed his response to the court's order requiring supplemental briefing on the topic of his claim for such expenses.

**8.** Mr. Tippett is not admitted to the bar of this court, and the court does not presume that his legal practice would necessarily have prepared him to litigate this case.

tiff's response brief and plaintiff's supplemental brief thoroughly and has attempted to discern all of plaintiff's legal arguments.

## B. RCFC 12(b)(1)

■ In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## C. RCFC 12(b)(6)

■ When considering a motion to dismiss under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court must also determine whether the complaint meets the plausibility standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002).

## D. RCFC 52.1

■ RCFC 52.1 provides for judgment on the administrative record. To review a motion under RCFC 52.1, the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed.Cir.2005). The court must make fact findings where necessary. *Id.* The resolution of a motion filed under RCFC 52.1 is akin to an expedited trial on the paper record. *Id.*

## E. Decisions of Boards for Correction of Military Records

■ The court does not review the issue before a board for correction of military records *de novo;* rather, this court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed.Cir.2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed.Cir. 2003)). Plaintiff's burden is to show by " 'cogent and clearly convincing evidence' " that the decision of the board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir.1986) (quoting *Dorl v. United States*, 200 Ct.Cl. 626, 633 (1973)). Plaintiff must also overcome the presumption of regularity which attaches to the actions of the ABCMR. *See Richey v. United States*, 322 F.3d 1317, 1326 (Fed.Cir.2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed.Cir.2001))).

■ Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases in this circuit, the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1156 & n. 12 (Fed.Cir.1983) (citation omitted). The correction board's decision must be sufficiently detailed for the court to ascertain the reasoning behind the denial of benefits to the

applicant. *See Buchanan v. United States,* 621 F.2d 373, 383 (Ct.Cl.1980) ("The burden that would be placed upon plaintiff in this court would be almost impossible if the correction board were permitted, in these circumstances, to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error."). The court must also consider whether the correction board has failed to correct "plain legal error." *Dodson v. United States,* 988 F.2d 1199, 1204 (Fed.Cir.1993) (citations omitted).

The court accords a presumption of regularity and deference to a correction board's denial of relief. *Id.* (noting that "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs" (citing *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992))). However, " 'when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate.' " *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir. 2004) (quoting *Yee v. United States,* 512 F.2d 1383, 1387 (Ct.Cl.1975)). In cases of clear injustice, the board has a moral duty to " 'take steps to grant thorough and fitting relief.' " *Id.* (quoting *Caddington v. United States,* 178 F.Supp. 604, 607 (Ct.Cl.1959)). When a board does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court. *Yee,* 512 F.2d at 1387 (citing *Skaradowski v. United States,* 471 F.2d 627 (Ct.Cl.1973) and *Duhon v. United States,* 461 F.2d 1278 (Ct.Cl.1972)).

## II. Analysis

### A. Jurisdiction

■ Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, "does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (citation omitted). A plaintiff coming before the United States Court of Federal Claims, therefore, must also identify a separate provision of law conferring a substantive right for money damages against the United States. *Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir. 2004) (citing *Testan,* 424 U.S. at 398, 96 S.Ct. 948).

### 1. Promotion Claim

■ Plaintiff alleges that the Military Pay Act, 37 U.S.C. § 204 (2006), provides the required money-mandating provision of law for his promotion claim because he is requesting back pay related to the difference in pay between his actual rank of major and the allegedly correct ranks of lieutenant colonel and colonel.[9] Compl. ¶ 5; Pl.'s Resp. at 19. Claims for back pay based on § 204 are generally considered to be within the jurisdiction of this court. *Metz v. United States,* 466 F.3d 991, 998 (Fed.Cir.2006). Defendant, however, contends that § 204 is not money-mandating when a plaintiff seeks pay for a rank to which he was never promoted. Def.'s Reply at 4–5.

■ The court cannot agree with defendant. Whether or not a statute is money-mandating is an inquiry that was clarified by the *en banc* decision of the United States Court of Appeals for the Federal Circuit in *Fisher v. United States,* 402 F.3d 1167 (Fed.

---

9. The court agrees with defendant that plaintiff's reliance on other statutes to support this court's jurisdiction over his promotion claim was either abandoned, by failing to respond to defendant's challenges to plaintiff's jurisdictional assertions, or misplaced, because none of the other statutes cited by plaintiff are money-mandating. *See* Def.'s Reply at 2; Pl.'s Resp. at 9–10; *see also, e.g., Webco Lumber, Inc. v. United States,* 677 F.2d 860, 864 (Ct.Cl.1982) (deeming contention in a complaint that was not raised in the plaintiff's brief to be abandoned).

Cir.2005) (*en banc* in relevant part). In determining its jurisdiction over a suit, the money-mandating nature of a statute is determined by this court, at the outset, without regard for whether a particular set of facts justifies compensation under the statute. *See id.* at 1173 ("The single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy."). As the non-*en banc* portion of *Fisher* commented:

> Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.

*Id.* at 1175–76.

Because *Fisher* altered the jurisdictional inquiry for Tucker Act suits, many military pay cases decided before *Fisher* offer questionable guidance as to this court's jurisdiction over such cases.[10] As far as military promotion cases are concerned, however, one pre-*Fisher* decision by the Federal Circuit indicates that jurisdiction over such cases is proper in this court, and this decision does not appear to conflict with the change in precedent announced in *Fisher*. *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir.2004) ("Because the Military Pay Act is a money-mandating statute, the general rule 'that one is not entitled to the benefit of a position until he has been duly appointed to it,' is inapplicable.") (citation omitted). Indeed, this court has recognized that *Dysart*

stands for the proposition that "the Military Pay Act is a money-mandating statute for improperly denied promotions in the military." *Hoskins v. United States*, 61 Fed.Cl. 209, 218 (2004) (citing *Dysart*, 369 F.3d at 1315). The Federal Circuit also has relied on *Dysart* to endorse this court's power to review military promotion claims. *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed.Cir. 2007) ("*Dysart* itself recognized that courts can evaluate whether the military follows the procedures mandated by statute or by its own regulations when making promotion decisions." (citing *Dysart*, 369 F.3d at 1315; *Lewis v. United States*, 458 F.3d 1372, 1377 (Fed.Cir.2006))). These authorities show that jurisdiction lies for plaintiff's promotion claim.

### 2. Retirement Pay Claim

■ Mr. Tippett has failed to cite to any money-mandating statute supporting his claim for retirement pay. *See* Compl. ¶ 5; Am. Compl. at 13. Plaintiff bears the burden of establishing subject matter jurisdiction. *Alder Terrace*, 161 F.3d at 1377. To the extent that plaintiff seeks an increase in his current retirement pay, plaintiff has not established that this court has jurisdiction to hear his claim. For this reason, plaintiff's retirement pay claim is dismissed for lack of jurisdiction.[11]

### 3. Equal Access to Justice Claims

■ Plaintiff relies on the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, to recover expenses he incurred in his earlier suit before this court, and in his current suit. Am. Compl. at 12. This court has jurisdiction over such claims. *See, e.g., Info. Scis. Corp. v. United States*, 86 Fed.Cl. 269, 277 (2009) (noting that this court has jurisdiction over EAJA claims when it also possesses jurisdiction over the underlying action for which attorneys fees or expenses are re-

---

**10.** For example, *Tippett I* is no longer good law in this regard. *Metz*, 466 F.3d at 997. The court also considers the jurisdictional analysis in *Smith v. Sec'y of Army*, 384 F.3d 1288 (Fed.Cir.2004), extensively relied upon by defendant, Def.'s Reply at 5–6, 8, to be suspect. Indeed, a recent case decided by this court relied on *Smith* and its discussion of promotion cases to dismiss a suit not on jurisdictional grounds, but for failure to state a claim. *See Reilly v. United States*, 93

Fed.Cl. 643, 649–50 (2010) (citing *Fisher*, 402 F.3d at 1176).

**11.** For reasons discussed *infra*, the court cannot grant plaintiff the promotions he seeks. His claim for retirement pay would thus necessarily fail, even if this court exercised jurisdiction over this claim.

quested). The court may consider plaintiff's EAJA claims.[12]

### 4. Tax Relief Claims and Offset Nullification Claims

■ In his prayer for relief Mr. Tippett demands that certain taxes be paid by the United States "because of the Government's failure to pay the money it owes him." Am. Compl. at 12. Defendant describes this request as a demand for "equitable tax relief." Def.'s Mot. at 13. This phrase appears to the court to be an apt description of plaintiff's claim. This court "lacks jurisdiction to grant general equitable relief." *Anderson v. United States*, 85 Fed.Cl. 532, 538 (2009) (citation omitted). Thus, this court lacks jurisdiction over plaintiff's equitable tax relief claim.[13]

■ Similarly, Mr. Tippett argues that the offsets which reduced his back pay award from $820,064.96 to $365,925.54 should be denied defendant. Am. Compl. at 11. The court notes that appropriate offsets were specifically mandated by *Tippett II* and *Tippett III*. In addition, as defendant points out, offsets of back pay awards have long been recognized as appropriate. Def.'s Mot. at 22–23 (citing authorities). Plaintiff nonetheless suggests that all offsets be denied defendant "because of the Government's failure to promptly pay Tippett." Am. Compl. at 11. This is another request for equitable relief. This court lacks jurisdiction over plaintiff's offset nullification request. *See Anderson*, 85 Fed.Cl. at 538.

### 5. Judicial Interest

■ Mr. Tippett asserts that this court should award him judicial interest, to compensate him for the delays he encountered in receiving his back pay award. Am. Compl. at 11. As defendant points out, plaintiff failed to allege a statutory basis for an award of interest. Def.'s Mot. at 13–14. "Interest may not be recovered against the government in the absence of an explicit waiver of sovereign immunity for that purpose." *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed.Cir.1993) (citing *FDL Techs., Inc. v. United States*, 967 F.2d 1578, 1581 (Fed.Cir.1992)). Because plaintiff has failed to allege a money-mandating statute in support of his claim for judicial interest, the court lacks jurisdiction to consider this claim.

### 6. Request to Remove and Destroy Void Discharge Papers

■ Mr. Tippett asks this court to order defendant to remove and destroy his June 1, 1990 discharge papers from records held at various federal agencies. Am. Compl. at 11. Further, plaintiff asks the court to "order the defendant to contact the States of Ohio and Louisiana and the Supreme Court of Louisiana to inform them that Tippett's 1 June 1990 [discharge form] is void and direct them to destroy their copies." *Id.* The court notes that "the Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998) (quoting *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975)). Because plaintiff's document destruction requests are not tied and subordinate to a money judgment, this court does not have the power to grant plaintiff the relief he seeks.[14]

### 7. Requests for Sanctions and Fees Pursuant to the Court's Inherent Powers

■ Mr. Tippett has asked for "up to $1,000,000 per day from 5 December 2001 to

---

12. Timeliness challenges to EAJA applications are not challenges to this court's jurisdiction over EAJA applications. *Scarborough v. Principi*, 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (holding that EAJA's "30–day deadline for fee applications and its application-content specifications are not properly typed 'jurisdictional'") (citation omitted).

13. Additionally, the court agrees with defendant that even under a different characterization of this claim, that of a claim for an income tax refund, plaintiff's tax claim may not proceed because plaintiff has failed to assert the fundamental jurisdictional prerequisites of such a claim. *See* Def.'s Mot. at 14–15.

14. Defendant asserts that any discharge papers held by the Army are now accurate. Def.'s Mot. at 23. Plaintiff appears to concede that his personnel file has been corrected, as required by the judgment in *Tippett III*. Compl. ¶ 37.

the date of full compliance" with the judgment in *Tippett III* as contempt sanctions against the United States. Am. Compl. at 11. Plaintiff has also asked for an award of litigation expenses, pursuant to this court's inherent powers, for his earlier filed suit before this court and this case. Pl.'s Supp. Br. at 1. Mr. Tippett relies on 28 U.S.C. § 2521(b)–(c) (2006) and RCFC 4.1 as sources of law supporting this court's jurisdiction over his claims for monetary contempt sanctions against the United States and his requests for an award of litigation expenses. Compl. ¶ 5; Pl.'s Resp. at 20; Pl.'s Supp. Br. at 1. The court, however, agrees with defendant that neither § 2521 nor RCFC 4.1 contains a waiver of sovereign immunity which would allow the monetary awards sought by plaintiff for contempt or litigation expenses.

Section 2521 discusses this court's power to punish contempt. *See* 28 U.S.C. § 2521(b) (establishing the court's power to punish contempt by fines). This power does not, however, contain a waiver of sovereign immunity. *See Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1382–83 (Fed.Cir.2005) (discussing precedent requiring explicit waivers of sovereign immunity, and finding that a court's power to punish contempt is insufficient, by itself, to support monetary sanctions or litigation expense awards against the United States). The court concludes that § 2521 itself does not contain a waiver of sovereign immunity and does not support this court's jurisdiction over plaintiff's requests for sanctions or litigation expenses.

As to RCFC 4.1, the text of that rule contains procedural requirements for the service of contempt orders. Nothing in the rule addresses a waiver of sovereign immunity by the United States. Waivers of sovereign immunity must be express, not implied. *Yancheng Baolong*, 406 F.3d at 1382 (citations omitted). Plaintiff's reliance on RCFC 4.1 as support for this court's jurisdiction over his monetary contempt sanctions request and his litigation expenses request is likewise unavailing.

In plaintiff's supplemental brief, Mr. Tippett discusses the inherent powers of federal courts, but none of his arguments address the question of a waiver of sovereign immunity by the United States. A long line of controlling precedent requires this court to respect the sovereign immunity of the United States, unless a specific waiver of that immunity can be found in a statute. "An award of money damages from the United States must have some concrete, legislatively authorized basis." *Texas Instruments Inc. v. United States*, 991 F.2d 760, 768 (Fed.Cir.1993) (citations omitted). As this court's predecessor court stated,

> [W]e address defendant's argument that plaintiff is not entitled to relief because, absent specific legislation to the contrary, the costs of litigation, including attorney's fees, are not recoverable in federal litigation. Defendant is correct. It is well settled that in the absence of specific statutory authority, expenses incurred in litigation, whether legal, accounting, secretarial, or other, are not awardable as such.

*Kania v. United States*, 650 F.2d 264, 269 (Ct.Cl.1981) (citations omitted). Pursuant to these authorities, the court cannot consider its inherent powers alone to be sufficient to overcome the sovereign immunity protecting the United States from claims for monetary contempt sanctions or litigation expenses. Plaintiff, in the instant case, has failed to cite to a specific statute or legislation waiving the sovereign immunity of the United States for the sanctions and expenses requested by Mr. Tippett. Accordingly, this court lacks jurisdiction over Mr. Tippett's requests for monetary sanctions or litigation expenses, other than his EAJA requests, discussed *supra*.

### 8. Summary of Jurisdictional Analysis

The court has jurisdiction over Mr. Tippett's promotion claim, and his EAJA claim for litigation expenses. Mr. Tippett has failed, however, to establish that this court has jurisdiction over his other claims. The court must dismiss for lack of jurisdiction his retirement pay claim, his tax relief and offset nullification claims, his judicial interest claim, his document removal and destruction claim, his monetary sanctions request, and his litigation expenses claim that is not founded on

EAJA. The court now turns to an analysis of whether relief may be granted based upon Mr. Tippett's promotion claim and EAJA claim.

## B. Failure to State a Claim

### 1. Promotion Claim

 It is well-settled that the promotion of military officers is not a power granted this court. *See, e.g., Lewis,* 458 F.3d at 1378 (noting that this court cannot order the President to promote a military officer) (citations omitted); *Selman v. United States,* 498 F.2d 1354, 1359 (Ct.Cl.1974) (citing *Brenner v. United States,* 202 Ct.Cl. 678, 685–86 (1973)). Indeed, the selection of officers for promotion is a type of substantive decision by a military branch that is frequently described as non justiciable. *See, e.g., Lindsay,* 295 F.3d at 1257 ("Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention fall into this category, and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so."). Where, however, a plaintiff seeks review "not of the substance of a military decision, but instead its compliance with an applicable statute," this court may review a military promotion decision for procedural error. *Id.*

 Here, plaintiff has alleged only one error in the Army's decision not to promote him to the ranks of lieutenant colonel and colonel.[15] Mr. Tippett alleges that statutes imposing a mandatory retirement date (MRD) for commissioned military officers compel his promotions, because the Army retained him beyond various mandatory retirement dates in violation of those statutes. *See* Pl.'s Resp. at 7–8 (citing 10 U.S.C. §§ 633–634, 637(a)(2)–(3) (2006)). As the

government persuasively argues, however, not one statutory provision cited by plaintiff could be read to require that the Army promote Mr. Tippett, or any other officer, if the Army fails to retire that officer at the time of his MRD. These statutes do not address, either explicitly or implicitly, Mr. Tippett's contention that the Army's failure to retire an officer by the time of his MRD entitles that officer to a promotion to a higher grade.

Mr. Tippett's promotion claim fails as a matter of law because he has no legal entitlement to the promotions he seeks, either in the statutes he cites or in any other source of law known to the court.[16] *See, e.g., Smith,* 384 F.3d at 1295 (noting that only plaintiffs who "enjoy[ ] a clear-cut legal right to promotion" may prevail). Furthermore, Mr. Tippett's claim appears to be founded on a right to automatic promotion. *See* Pl.'s Resp. at 7–8 ("Tippett contends that the mandatory promotion and retirement provisions of 10 U.S.C. § [§ ] 637(a)(3), 633, and 634 compel the Secretary of the Army to recommend Tippett for promotion to the President, since the Secretary chose not to retire Tippett prior to April 30, 2007."). A back pay claim based on statutes alleged to provide for automatic promotion to a higher grade must fail. *See, e.g., Lewis,* 458 F.3d at 1377–78 (noting that a promotion statute could not provide for automatic appointment to a higher grade, because such a power would offend the Constitution); *Dysart,* 369 F.3d at 1313, 1315 (same). Here, Mr. Tippett's claim could not succeed as a matter of law, even if he had been recommended for promotion and that promotion had later been denied to him by the President. *Dysart,* 369 F.3d at 1315–17. For all of these reasons, Mr. Tippett's promotion claim must be dismissed for failure to state a claim upon which relief can be granted.[17]

---

**15.** Plaintiff also complains that the record considered by various selection boards was "unfair and incomplete," because his military career includes many years of constructive service. Pl.'s Resp. at 18. Plaintiff concedes, however, that the Army could not mask the passage of twelve years during which Mr. Tippett performed no military duties without indulging in "total fictions." *Id.* at 17.

**16.** The court has found no support for Mr. Tippett's contention that the MRD statutes compel

promotion if the Army fails to retire an officer at the time of that person's MRD. Plaintiff has offered no authority in support of his creative attempt to transform a mandatory retirement statute into a mandatory promotion statute.

**17.** To the extent that plaintiff suggests that the decision in *Tippett II* and the judgment entered in *Tippett III* could be read to compel the Army to automatically promote Mr. Tippett to lieutenant colonel and colonel, *see* Am. Compl. ¶ 64, neither the text of those court decisions, nor

### 2. EAJA Claim

#### a. Expenses for *Tippett III*

■ The parties agree that Mr. Tippett's request for EAJA expenses for prosecuting the case resulting in *Tippett III* is untimely. *See* Def.'s Supp. Br. at 2 (citing 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G)); Pl.'s Supp. Br. at 1 ("Tippett concedes that he failed to apply for costs and fees in Case Number 96–308C within 30 days of the judgment in Tippett's favor being filed on April 23, 2002."). Because plaintiff's EAJA request for *Tippett III* was presented over five years after the statutory deadline, the court must reject his claim as untimely. *See, e.g., Hernandez–Garcia v. Nicholson*, 485 F.3d 651, 652 (Fed. Cir.2007) (affirming the dismissal of an EAJA application, filed one day late, as untimely); *SAI Indus. Corp. v. United States*, 421 F.3d 1344, 1346 (Fed.Cir.2005) (affirming the dismissal of an EAJA application, filed one day late, as untimely). Plaintiff's EAJA claim for expenses incurred in bringing his earlier suit is dismissed for failure to state a claim upon which relief can be granted.

#### b. Expenses for the Instant Suit

■ The parties agree that Mr. Tippett's claims for costs and fees for this suit are not yet ripe. Def.'s Supp. Br. at 3–4; Pl.'s Supp. Br. at 1. Ripeness is a doctrine affecting justiciability. *See Fisher*, 402 F.3d at 1176 ("Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness and political question are within its ambit.") (citation omitted). The court finds that plaintiff's EAJA claim for costs and expenses bringing the instant suit are not justiciable and must be dismissed without prejudice. *See Boers v. United States*, 44 Fed.Cl. 725, 732 (1999) (dismissing as premature an EAJA claim filed before judgment was entered in that case), *aff'd*, 243 F.3d 561 (Fed.Cir.2000) (table).

The court notes, however, that EAJA only permits awards to "prevailing parties," a term of art that can only be understood through careful review of binding precedent.[*]

Plaintiff is directed to consider relevant precedent on this particular issue. Such consideration should include, but is not limited to, review of *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934 (Fed.Cir.2007); *Davis v. Nicholson*, 475 F.3d 1360 (Fed.Cir. 2007); *Akers v. Nicholson*, 409 F.3d 1356 (Fed.Cir.2005); *Rice Servs., Ltd. v. United States*, 405 F.3d 1017 (Fed.Cir.2005); *Former Employees of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360 (Fed.Cir. 2003); *Vaughn v. Principi*, 336 F.3d 1351 (Fed.Cir.2003); and *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371 (Fed.Cir. 2002). An EAJA application that is filed with no regard for these precedential decisions, and which does not thoroughly examine the prevailing party issue, may be considered to be frivolous.

### C. Judgment on the Administrative Record

The court has dismissed all of plaintiff's claims. Notwithstanding this fact, in the interests of judicial economy the court also considers defendant's motion for judgment on the administrative record. The questions before the court are whether the ABCMR's consideration of Mr. Tippett's claims was procedurally fair, whether the board's decision was supported by substantial evidence, and whether the board failed to correct plain legal error or clear injustice.

#### 1. Procedural Fairness

■ Mr. Tippett presented his promotion and related retirement pay claims to the ABCMR on July 23, 2008, as well as a request for additional military awards due him for his service in Iraq. Administrative Record (AR) at 98, 132–33. The ABCMR decision issued September 24, 2008 is detailed and clearly reasoned. The board reviewed plaintiff's military career, his claims and relevant facts in his records. The board granted Mr. Tippett partial relief, as to the award of two bronze service stars. Plaintiff has not alleged that the ABCMR's consideration of his application was procedurally unfair, and

---

precedent discussing this court's role in reviewing military promotions, supports such a suggestion.

the court sees no evidence of procedural unfairness on this record.

## 2. Substantial Evidence

■■■ The ABCMR was largely confronted with a legal question. Mr. Tippett asked the board to promote him to lieutenant colonel and then colonel, based on the allegation that he had served well past his MRD as a major (and, indeed, past the MRD that would be applicable to a lieutenant colonel). Upon review of plaintiff's military record, the board agreed that Mr. Tippett had indeed served past certain mandatory retirement dates. The ABCMR concluded, however, that the mandatory retirement provisions cited by plaintiff "do not support the applicant's essential argument that he automatically gets those promotions solely by virtue of his length of service." AR at 93.

There is substantial evidence that supports the board's decision. As discussed *supra*, the statutes cited by plaintiff do not provide for automatic promotions. The ABCMR noted that Mr. Tippett's court-ordered reinstatement produced a situation where his return to active duty, with credit for twelve years of constructive service, immediately caused a violation of mandatory retirement provisions. *See* AR at 94 ("It is conceded that the applicant should not have been allowed to have served on active duty after being reinstated by the court for more time than it took to process him for retirement."). Although there were clear violations of the mandatory retirement provisions, the board noted that promotions to a higher rank "are not entitlements and are not given for time served as the applicant has implied." AR at 93. The court finds that the board's decision

to reject Mr. Tippett's requests for promotion to lieutenant colonel and colonel is supported by substantial evidence. Plaintiff has not shown that the board's decision was "arbitrary, capricious, [or] contrary to federal law."[18] Am. Compl. ¶ 76.

## 3. No Injustice or Legal Error to be Corrected

■■■ Once Mr. Tippett returned to active duty and was promoted to major, he was considered for promotion to lieutenant colonel in 2006. Compl. ¶ 35; AR at 89. As the ABCMR noted, "it is possible and more likely than not[ ] that an officer who receives constructive service to the extent that applicant received[ ] will not be competitive with their peers when reviewed by selection boards." AR at 93. Indeed, plaintiff concedes that "he has not done many of the typical things that an active duty Major would do to be competitive for selection for promotion to Regular Army Lieutenant Colonel." Pl.'s Resp. at 17. The board also noted that Mr. Tippett had received negative evaluations in 2005 and 2006 for physical performance (fitness and weight) standards. AR at 90. In addition, the ABCMR noted that Mr. Tippett's records dating from the misconduct incident in Germany were available "to be considered by any and all selection boards." AR at 95. The board therefore found no injustice in the failure of the Army to promote Mr. Tippett, because "promotions are based on demonstrated performance and potential to serve at the next higher grade." AR at 93. The court finds that the board did not fail to correct injustice or legal error.[19]

In 2007, the Army also considered Mr. Tippett for promotion to lieutenant colonel

18. Mr. Tippett complains that "the ABCMR ... failed to adequately address why the provisions of 10 U.S.C. Sections 632–634 requiring the government to either promote an officer or retire him upon reaching Mandatory Retirement Dates, do not apply to Tippett." Am. Compl. ¶ 76. The board fully explored this question. The ABCMR stated that "[t]his statute itself does not automatically bestow a promotion on an officer to the next higher grade upon exceeding the maximum years of service for that officer's current grade. Rather, notwithstanding these provisions, an officer may not be promoted unless chosen by a duly constituted board or [Special Selection Board] and subsequently confirmed." AR at 93. Al-

though the ABCMR may not have parsed every sentence of every statute cited by plaintiff, the board, like this court, found no support for plaintiff's promotion claims in the statutes establishing mandatory retirement dates for military officers.

19. The ABCMR noted that this court's judgment ordering the reinstatement of Mr. Tippett contained "nothing ... to suggest that the court intended that he be unduly enriched by its action," and concluded that Mr. Tippett was not entitled to a "windfall" promotion. AR at 93–94.

through the mechanism of Special Selection Boards (SSBs) for fiscal years 1993 and 1994 (FY93, FY94). AR at 247. Due to a procedural flaw, the Army offered Mr. Tippett new SSBs for FY93 and FY94. Def.'s Mot. at 4. Upon review of the relevant records, the ABCMR apparently considered the procedural flaw in the 2007 SSBs to be immaterial and informed Mr. Tippett that the Army's notice that it would hold new SSBs was "no longer applicable." AR at 94. Nonetheless, in 2009 the Army submitted Mr. Tippett's records to new FY93 and FY94 SSBs so that he could be considered for promotion to lieutenant colonel. Mr. Tippett was again not selected for promotion. AR at 4–7, 28–31. Mr. Tippett has not alleged any specific procedural flaws or errors in the decisions of the 2009 SSBs. Upon this record, the court concludes that no injustice or legal error was committed by the SSBs when they declined to retroactively promote Mr. Tippett to lieutenant colonel.

Mr. Tippett asserts that the rejection of his promotion claim by the ABCMR was both erroneous and unjust. Am. Compl. ¶ 76. Mr. Tippett has not alleged any specific procedural flaws or legal errors in the decisions of the 2009 SSBs, or in the 2008 decision by the ABCMR, other than the fact that the ABCMR rejected his interpretation of mandatory retirement statutes. The court has also rejected plaintiff's interpretation of these statutes. Plaintiff has not shown that the Army's failure to promote him, either through the ABCMR or the SSBs convened in 2009, was erroneous or unjust. On this record, no plain legal error or clear injustice needed correction.

## CONCLUSION

Although the court has jurisdiction over Mr. Tippett's promotion claim, and his EAJA claim for litigation expenses, his other claims must be dismissed for lack of jurisdiction. Mr. Tippett's promotion claim must be dismissed for failure to state a claim upon which relief can be granted. Mr. Tippett's claim under EAJA for expenses incurred in *Tippett v. United States*, No. 96–308C, is also dismissed for failure to state a claim. Mr.

Tippett's EAJA claim for expenses incurred in this suit is dismissed as unripe.

Although the court has dismissed all of plaintiff's claims, the court has decided, in the alternative, that defendant's motion on the administrative record must be granted as to plaintiff's promotion and retirement pay claims. The decision of the ABCMR was procedurally fair, supported by substantial evidence, and did not fail to correct plain legal error or clear injustice. The complaint must be dismissed.

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed May 5, 2010, is **GRANTED;**

(2) Even if plaintiff's promotion and retirement pay claims were not dismissed, Defendant's Motion for Judgment on the Administrative Record, filed May 5, 2010, is **GRANTED** as to plaintiff's promotion and retirement pay claims;

(3) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, as follows:

(a) Plaintiff's retirement pay claim, tax relief and offset nullification claims, judicial interest claim, document removal and destruction claim, monetary sanctions request, and litigation expenses claim not founded on EAJA are all **dismissed without prejudice,** for lack of jurisdiction;

(b) Plaintiff's promotion claim, and his claim under EAJA for expenses incurred in *Tippett v. United States,* No. 96–308C, are **dismissed with prejudice,** for failure to state a claim upon which relief may be granted;

(c) Plaintiff's claim under EAJA for expenses incurred in this suit is **dismissed without prejudice,** because it is not yet ripe; and

(4) No costs.