NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KEITH L. KELLER,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-5051

---

Appeal from the United States Court of Federal Claims in No. 1:03-cv-02752-LJB, Judge Lynn J. Bush.

---

Decided: May 8, 2014

---

KEITH L. KELLER, of Pine Ridge, South Dakota, pro se.

DOUGLAS K. MICKLE, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and DEBORAH A. BYNUM, Assistant Director. Of counsel on the brief was TODI S. CARNES, Attorney, Military Personnel Branch, Air Force Legal Operations Agen-

cy, United States Air Force, Joint Base Andrews, Maryland.

_____

Before LOURIE, CLEVENGER, and REYNA, *Circuit Judges.*

PER CURIAM.

Keith L. Keller appeals from the 2013 final decision of the United States Court of Federal Claims dismissing his second amended complaint with prejudice. The court's decision denied Dr. Keller's claims seeking reinstatement into the Air Force and retroactive promotions. *Keller v. United States*, No. 03-2752 (Fed. Cl. Dec. 6, 2013). Because the Court of Federal Claims correctly analyzed Dr. Keller's claims and we see no clear error in the court's findings of fact, we *affirm*.

## BACKGROUND

Dr. Keller served in the Air Force as an active duty reserve officer from January 1996 until November 1997. A physician with over a decade of experience in private practice, Dr. Keller served with the rank of Major as an obstetrician and gynecologist at Grand Forks Air Force Base in North Dakota.

Dr. Keller's first annual performance review began in August 1996. In the course of this review, the reviewing officers learned of several complaints against Dr. Keller arising from failures to follow sanitary procedures, failures to diagnose common conditions, failures to remove gauze and sponges from patients, and inappropriate prescriptions. The reviewing officers subsequently completed an Officer Performance Report ("OPR") for 1996 indicating that Dr. Keller had exhibited substandard performance of his duties. A Promotion Recommendation Form ("PRF") completed for the same review period recommended that Dr. Keller not be promoted. After considering the OPR, the Central Medical Corps Selection

Board ("Selection Board") on November 12, 1996 declined to promote Dr. Keller to the rank of Lieutenant Colonel.

In April 1997, the Air Force initiated involuntary administrative discharge proceedings against Dr. Keller based on his substandard performance in 1996. Dr. Keller requested voluntary discharge in June 1997, but in October asked to withdraw this request. Dr. Keller's second yearly review was held shortly after the withdrawal request, and although his second OPR was more positive than the first, the corresponding PRF again recommended that Dr. Keller not be promoted. On November 5, 1997 the Selection Board again declined to promote Dr. Keller. Under applicable laws and regulations, the consequence of this second non-selection was Dr. Keller's mandatory separation from the Air Force no later than June 30, 1998.

The Secretary of the Air Force accepted Dr. Keller's June 1997 request for voluntary discharge on November 17, 1997. Although the Secretary ordered this discharge to be held in abeyance on November 25, 1997— presumably because of Dr. Keller's attempted withdrawal of his request for voluntary discharge—Dr. Keller was discharged the next day, November 26.

Dr. Keller filed a complaint with the Air Force Board for Correction of Military Records ("Board") in October 1999, requesting reinstatement to active duty. In October 2001, the Board found that Dr. Keller was improperly discharged on November 26, 1997 because of an internal miscommunication about the Secretarial abeyance action. The Board constructively extended Dr. Keller's date of separation to June 30, 1998, the date upon which Dr. Keller would have been mandatorily separated due to his second non-selection for promotion or continuation. The Board denied any additional relief to Dr. Keller, however, finding that no further "error or injustice" beyond the miscommunicated abeyance action had occurred.

In November 2003, Dr. Keller appealed the decision of the Board to the Court of Federal Claims. The parties agreed that a remand to the Board would be helpful to address new allegations raised by Dr. Keller on appeal. The Board found that one of these new allegations—that Dr. Keller had had insufficient time to respond to the two negative PRFs—had merit. By way of relief, the Board in October 2004 ordered new Selection Boards to be convened to review Dr. Keller's 1996 and 1997 performances.

The new 1996 and 1997 Selection Boards met in November 2005, and each Board again declined to recommend Dr. Keller for promotion. The new 1997 Board did select Dr. Keller for a three-year continuation (from 1998 to 2001, with a constructive separation date in 2001), however. The continuation was served constructively—Dr. Keller did not return to active duty—and resulted in approximately $160,000 in back pay and benefits for Dr. Keller. The constructive continuation also resulted in three additional Selection Board reviews for the constructively served years 1998, 1999, and 2000.

The Selection Boards for 1998 and 2000 were composed of the same members and met on the same day in November 2006. The 1999 Selection Board had a different composition and met in May 2007. None of these Selection Boards selected Dr. Keller for either promotion or continuation. Based on his non-selection, the Air Force processed Dr. Keller for a constructive separation date of July 31, 2001.

Following his non-selection for 1998 through 2000, Dr. Keller filed an amended complaint with the Court of Federal Claims. The Air Force filed motions to dismiss for lack of jurisdiction and failure to state a claim, and moved for judgment on the administrative record. While these motions were pending, in December 2009 Dr. Keller raised additional issues before the Board, and the parties eventually agreed to stay proceedings in the Court of

Federal Claims while the Board considered Dr. Keller's arguments.

Dr. Keller's 2009 petition to the Board raised several arguments. He alleged that there were problems with (1) the panel membership of the 2000 Selection Board; (2) the PRFs before the 1998–2000 Selection Boards; (3) the Air Force Forms 77 before the 1998–2000 Selection boards; (4) his professional files; (5) the Officer Selection Briefs before the 1998–2000 Selection boards; and (6) the OSRs before the 1998–2000 Selection boards. He also argued that his July 31, 2001 separation date was improper and should be voided and that he should have been credited with advancements during the period of his constructive service. The Board rejected all of these arguments in April 2010.

Dr. Keller filed a second amended complaint with the Court of Federal Claims in October 2012, specifically focusing on the composition of the 2000 Selection Board and alleged problems with his PRFs and other documents relied on by the 1998–2000 Selection Boards. That court rejected Dr. Keller's claims in a December 6, 2013 opinion and order. In particular, the Court of Federal Claims dismissed Dr. Keller's request for promotion under Rule of the Court of Federal Claims 12(b)(6) ("RCFC 12(b)(6)") for failure to state a claim on which relief could be granted. The court further found no impropriety with the fact that the 1998 and 2000 Selection Boards had identical composition because the Air Force has interpreted its regulations prohibiting service by the same individuals on "successive" boards as only prohibiting service on consecutive-year boards. After a considered analysis, the court also rejected each of Dr. Keller's allegations of problems with his personnel records, including the PRFs, OSRs, and other records relied on by the 1998–2000 Selection Boards. The court thus granted the Air Force's motion for judgment on the administrative record and denied Dr. Keller's motion for judgment on the administrative record.

Dr. Keller now appeals from the final decision of the Court of Federal Claims. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We review a decision dismissing a complaint under RCFC 12(b)(6) de novo. We review a decision for judgment on the administrative record de novo, and review the trial court's fact findings in this regard for clear error. *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010).

DISCUSSION

I

On appeal, Dr. Keller does not renew his argument that the 2000 Selection Board was improperly constituted. Nor does he directly claim, as he did below, that the PRFs and OSRs contained improper and prejudicial information and omissions. Instead, he argues that the Court of Federal Claims erred as evidenced by the following statement in its findings of fact:

> In 2005, the [reconvened 1996 and 1997 Selection Boards ("SSBs")] met but neither SSB selected Dr. Keller for promotion to lieutenant colonel. However, the 1997 SSB selected Dr. Keller for continuation. Selection for continuation appears to have presented Dr. Keller with three mutually exclusive choices: (1) submitting an application for continuation by reinstatement to active duty; (2) agreeing to continuation via constructive service for the purpose of being considered for promotion (and continuation) by subsequent SSBs; or (3) abandoning continuation entirely, whether through active duty service or constructive service.

> It is undisputed that Dr. Keller chose continuation through constructive service.

*Keller*, No. 03-2752, at 5 (internal citations omitted).

According to Dr. Keller, this finding incorrectly implies that the doctor, after being selected for a three-year continuation in 2005 by the reconvened 1997 Selection Board, had the choice to either immediately return to active duty or serve his three-year continuation constructively. Dr. Keller argues that he in fact had no such choice, but was required to serve his three-year continuation constructively while hoping for further continuations or a promotion that would eventually allow him to return to active duty.

In support of this argument, Dr. Keller claims that the Board informed him in March 2006 that he could apply for reinstatement as a result of his three-year continuation. Appellant's Memorandum In Response To Its Notice Of Submission Without Oral Argument ("Appellant Memorandum") 3. However, when Dr. Keller requested additional details about the conditions of his reinstatement via letter to the Air Force Personnel Center ("AFPC"), the agency replied in June 2006 with details about how this could occur. First—according to the AFPC's view, which was later confirmed by the Board—Dr. Keller would have to accept his three-year constructive continuation ending in 2001 and be reviewed by Selection Boards for the years 1998, 1999, and 2000. If one of these Boards selected him for promotion, he could be reinstated via promotion. If none of these Boards selected him for promotion but the 2000 Board nevertheless selected him for continuation, his constructive separation date would be extended to 2004, and he would have the opportunity to be reviewed by three additional Selection Boards for the years 2001, 2002, and 2003. Again, if one of these Boards selected him for promotion, he could be reinstated via promotion. If none of these Boards selected him for promotion but the 2003 Board nevertheless selected him for continuation, his separation date would be extended to 2007. At this point, because 2007 represented a date in the future beyond the present date

of June 2006, he could apply to return to active duty. Based on this explanation, Dr. Keller argues that contrary to the Court of Federal Claims' finding, in June 2006 before any of these Selection Boards had convened he "had but one choice—either to accept or reject constructive continuation as offered." Appellant Memorandum 3.

This alleged factual error by the Court of Federal Claims was prejudicial, in Dr. Keller's view, because many of his arguments before that court alleged the harmful nature of blank spaces on his personnel forms resulting from his long hiatus from active duty. The Board, as quoted by the Court of Federal Claims, explicitly noted in this regard Dr. Keller's choice not to pursue reinstatement to active duty:

> we note the applicant was offered an opportunity to request reinstatement to active duty, but instead elected continuation and further SSB consideration. Thus it appears his actions contributed greatly to the predicament [in which] he now finds himself and is the primary reason he has not received the performance reports and clinical assessments he indicates are so critical to him receiving full and fair consideration for promotion/continuation.

*Keller*, No. 03-2752, at 21.

## II

In 2005, a newly constituted 1997 Selection Board, although declining to select Dr. Keller for promotion, selected him for a three-year continuation. The Court of Federal Claims found that following this selection, Dr. Keller could have pursued one of three options: (1) submit an application for continuation by reinstatement to active duty; (2) agree to continuation via constructive service; or (3) abandon continuation entirely. *Keller*, No. 03-2752, at 5. Although Dr. Keller argues that the first option was

illusory because reinstatement to active duty depended on subsequent promotions or continuations that he did not ultimately receive, what he fails to recognize is that eventual reinstatement *was an option* immediately after continuation and before the Selection Boards for 1998, 1999, and 2000 declined to either promote him or extend his continuation beyond 2007. *See, e.g.*, Administrative Record at 623 (reporting the official results of the reconstituted 1997 Selection Board and stating that because of his three-year continuation, Dr. Keller could, "if eligible . . . submit an application to request reinstatement to active duty . . . ."). Of course, the option to return to active duty was eventually closed off to Dr. Keller after he had had the opportunity to be reviewed by three additional Selection Boards and each one declined either to promote him or select him for continuation. But we see no clear error in the court's finding that immediately after his selection for continuation, the possibility of reinstatement remained open.

Even if we were to discern clear error in the Court of Federal Claims' findings of fact with regard to Dr. Keller's options at the time he selected constructive service—which we do not—it is noteworthy that the court's analysis did not rely on this finding. After quoting the Board's statement that Dr. Keller had potentially "contributed to his predicament" by selecting constructive service, the court explained that although

> constructive service may be of limited benefit when service-members are later considered for promotion . . . [i]t does not follow . . . that a service-member who obtains constructive service from a corrections board has been the victim of injustice merely because the government has not provided, in addition to relief in the form of constructive service, fabricated supplementary service records to make that service-member's

records appear to be more competitive for promotion or continuation.

*Keller*, No. 03-2752, at 21 (citing *Tippett v. United States*, 98 Fed. Cl. 171, 182 n.15, 184–85 (Fed. Cl. 2011)). Thus, the court concluded that even if Dr. Keller was only offered "relief in the form of constructive service" and did not have the option to return to active duty, it "d[id] not follow . . . that [he was] the victim of injustice." *Id.* We agree with the court's analysis.

Finally, we note that Dr. Keller does not articulate any remedy this Court can provide in response to the alleged error. Dr. Keller argues that the Board should have either promoted him or extended his date of separation to July 2007 so that he could return to active duty. Appellant Memorandum 3–4. He requests, as he requested below, that we remand to the Secretary of the Air Force with instructions that he be returned to the active-duty list and credited with "all back pay, special pay, and allowances." Appellant Br. 2. As Dr. Keller himself concedes, this remedy would require his promotion to the rank of Lieutenant Colonel. Appellant Memorandum 3–4. But the Court of Federal Claims correctly found that it "lacked the authority to order one of the service branches to promote one of its members," and dismissed Dr. Keller's request for failure to state a claim on which relief could be granted. *Keller*, No. 03-2752, at 10. We likewise lack the authority to grant the relief that Dr. Keller requests because courts do not have the expertise required to make promotion and retention decisions. *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed. Cir. 2000); *Adkins v. United States*, 68 F.3d 1317, 1323–1324 (Fed. Cir. 1995).

## CONCLUSION

For the reasons provided above, we affirm the final decision of the United States Court of Federal Claims.

**AFFIRMED**

Costs

Each side shall bear its own costs.